## Florence A. Ames v. Gaston W. Ames, Appellant.

*Divorce—Domicil of libellant—Jurisdiction, C. P.*

The court has jurisdiction where the libel in divorce is filed by the wife, who had been compelled to go outside the state in order to earn a living, and the subpoena was served in the county where the husband resided and where the alleged cause of divorce arose, the wife not having any other residence in this state outside of the domicil of her husband.

*Divorce—Allowance of counsel fee and alimony.*

A proper allowance for counsel fee and alimony will be allowed, it appearing that the respondent, although alleged to be of unsound mind, is entrusted with responsible duties in his father's private bank. A man cannot give away his services or earning power and deprive those who are entitled to them.

Argued Jan. 18, 1898. Appeal, No. 17, Jan. T., 1898, by defendant, from decree of C. P. Wayne Co., Oct. T., 1896, No. 88, confirming decree of court awarding payment of alimony and counsel fee in divorce. Before RICE, P. J., WICKHAM, BEAVER, ORLADY and PORTER, JJ. Affirmed. PORTER, J., dissents.

Petition for allowance for counsel fees and maintenance pendente lite. Before ARCHBALD, P. J., of the 45th judicial district, specially presiding.

The facts sufficiently appear in the opinion of the court below as follows:

The first question is one of jurisdiction; the libellant—it is said—is not a resident of this county, but of Brooklyn, N. Y., and is not entitled in consequence to institute proceedings for a divorce in this county and should not therefore be allowed alimony or counsel fees. Without stopping to consider whether this is the proper stage in the case to raise that question, I see nothing to sustain it. It is true, the evidence shows that Mrs. Ames resides in Brooklyn and that her husband resides here; but a personal service of the subpœna has been made upon him and it is difficult to see where she could better pursue her application for a divorce than here in the forum of his domicil. If she was a resident of some other part of the state the case might be different. We should then have the same conditions as appear in Thompson v. Thompson, 2 Pa. C. C. 573, where it was held by MORROW, P. J., that a wife who resided in Lackawanna county could not proceed for a divorce in Bradford county, the place of her husband's residence, being confined by the terms of the statute to the county of her own residence. I am not indeed prepared to go this length, but I concede of course in the face of this decision, that the matter is open for argument. The case falls rather within the exception recognized in Sherwood's Appeal, 17 W. N. C. 338; s. c. 1 Pa. Sup. Ct. Digest, 36. The libellant there began proceedings for a divorce from her husband in the court of Somerset county. From the report of the case in the Supreme Court digest it appears—and this is a very important fact to be noted—that neither her husband nor herself were residents of that county. It was held upon this

showing that she could not maintain her suit in Somerset, and that her residence being in Philadelphia the courts there alone had jurisdiction. It is at the same time stated per curiam that "if she had no residence in this state a different question would be presented," and the exception so noted is just what we have here. If the residence in fact, which Mrs. Ames has in Brooklyn, N. Y., precludes her from claiming the residence by right, which she has here, at the place of her husband's domicil, she still has no residence other than his within the state, to the courts of which she might be compelled to resort if the extreme view taken in Thompson v. Thompson were to be followed. By the service of the subpœna upon the respondent the court has jurisdiction over him personally, and there is nothing to prohibit it taking jurisdiction over the cause of divorce as well. I see no reason therefore for refusing to award the libellant alimony upon that ground.

This brings me to the merits of the application: Is the respondent shown to be of such condition of mind or estate as warrants the order asked for? The answer is not altogether free from difficulty. There is no satisfactory evidence that the mental malady of the respondent affects him at the present time. He returned from the asylum in the summer of 1895, after being there but a very few months, and has resumed his former occupation in his father's private bank. It is said that he is put there merely to occupy and divert him, and that the lady assistant really does the work. But this is so extraordinary a statement as to be far from convincing. I should not care to be one of the depositors of a bank, to say nothing about being its responsible owner, where a man of any mental unsoundness was in even nominal charge, and that any one, even an only son, should be put there for mere diversion, needs some more confirmatory proof than is to be found in the evidence. Being in the bank and in its apparent control as cashier or manager the only reasonable inference is, that he is there with all the mental and business capacity which that position implies.

With this result reached the obligation of the respondent is established. If he can act as cashier, he can earn the salary of a cashier; the fact that it is not given him, is not controlling. A man cannot give away his services or his earning

power, and deprive those who are entitled to it, and that is the aspect the case presents if the first conclusion be correct with regard to the respondent's business capacity. It goes without saying that the present application of the libellant for alimony is unwelcome, and the temptation to evade it is correspondingly great. This calls of necessity for a close scrutiny of the evidence of incapacity, and throws a more than usual burden on those who assert it. Knowing neither of the parties and desiring to do no more than justice to both of them, I must confess that this is the way that the case impresses me, after a full consideration of the different possible phases of it. There is such an opportunity as well as a temptation for collusion between father and son, that the business relations between them must be more fully cleared up than it is, to convince me that the employment of the son by the father is nominal. The same is true with regard to the son's alleged loss of property; it has all gone into the hands of the father, to become the son's again in due time if he lives. Under what circumstances has this happened, and why? This is not answered in the depositions and as it has been brought about since these troubles between the son and his wife have arisen, we are entitled to more than the bare fact that it has occurred.

It remains merely to fix the amount of alimony to be awarded. In the former proceedings the amount was $30.00 per month. While this was fixed by agreement it must be regarded as measuring the wife's necessities, and less than this can hardly be expected now. It is said that this was the whole of what the respondent then earned at the bank, and argumentatively, all that he could in any event earn now. But if the lady clerk earns a dollar per day, the services of the respondent as manager cannot be worth less as it would seem than double that amount. This would leave at least half of the respondent's earnings, or ability to earn, untouched, and as the alimony will only last while the suit goes on, this division will not have to continue long.

[And now, March 15, 1897, it is ordered that the respondent, Gaston W. Ames, within ten days from the service of this order, pay to the libellant, Florence A. Ames, a counsel fee of $35.00 and that he further pay the sum of $30.00 per month alimony, for the support and maintenance of the said Florence

460　　　　　　　　AMES v. AMES.

Opinion of Court below—Opinion of the Court.　[7 Pa. Superior Ct.

A. Ames pending this suit, such payment to be made monthly in advance, to be computed from the 1st of March, 1897, the first payment to be made within ten days of the service of this order, and thereafter on the first of each and every month until the further order of the court.] [1]

Defendant appealed.

*Error assigned* was in making the order or decree as above recited.

*H. Wilson* and *F. P. Kimble*, for appellant.—The jurisdiction of the court is given by the act of March 13, 1815, sec. 2: Sherwood's Appeal, 17 W. N. C. 338; Nagle v. Nagle, 3 Grant, 155.

Under some circumstances husband and wife may have separate domicils. The residence of the husband does not in all cases, by reason of their legal unity of person, draw to it the residence of the wife: Colvin v. Reed, 55 Pa. 375; Barber v. Barber, 21 How. 582; Bishop on Marriage and Divorce, sec. 128.

Unless it be held that the husband's residence draws to it the wife's residence, the libellant in this case can have no standing to maintain this action until she has regained a residence in this state.

*W. H. Lee*, for appellee, submitted no paper-book.

OPINION BY RICE, P. J., July 29, 1898:

This libel was filed in the county where the parties resided when the alleged cause for divorce arose, and where the defendant still resides, and the subpœna was served upon him. The fact that the petitioner was compelled to go elsewhere in order to earn a living, she not having any other residence in this state outside of the domicil of her husband, was not sufficient to prevent the court from taking jurisdiction. The majority of this court are of opinion that the case was correctly decided for the reasons given by the learned president judge of the 45th district specially presiding.

The order is affirmed and the appeal dismissed.

PORTER, J., dissenting:

I dissent from the judgment of the court in this case on the ground that the libellant has no residence whatever in the state of Pennsylvania. I am of opinion that a wife cannot go into another state (for whatever reason) and from there successfully institute proceedings for divorce in Pennsylvania. She must have an actual residence in this state, and not a mere constructive residence at the domicil of her husband against whom she is proceeding adversely.