## English, Appellant, *v.* English.

*Divorce—Appeals—Jurisdiction.*

The rule that a person invoking the jurisdiction of a court ought to be estopped to deny it upon appeal, does not extend to a decree of divorce, where upon the face of the record itself it appears that the court was without jurisdiction ever to entertain the libel.

A libellant in divorce who has succeeded in obtaining a decree in her favor may appeal from the decree, if it appears on the face of the record that the court had no jurisdiction over the case. It is to the interest of the

public as well as the parties—of one party as much as the other—that the nullity of the decree be judicially declared promptly. But on such appeal the libellant cannot complain of mere irregularities which do not affect the validity of the decree.

*Divorce—Master's report—Rule for divorce—Practice, C. P.*

There is nothing in the Act of March 10, 1899, P. L. 8, empowering the court of common pleas to appoint masters in divorce proceedings, which makes the formal approval of the master's report an essential prerequisite to a valid decree; nor is there any statute requiring a rule to show cause why divorce should not be decreed to issue and be made absolute before a decree may be made.

An allegation on an appeal from a decree in divorce that the record showed that the court below never considered the master's report, or took any action thereon, and that it did not appear that the order making absolute the rule to show cause was the act of the court, is not sustained by the record, where the following docket entries appear: " June 15, 1901, master's report filed and approved; June 17, 1901, rule for divorce a. v. m. ; June 17, 1901, proof of service of final rule filed; July 1, 1901, rule absolute, divorce decreed and proclamation made."

*Jurisdiction—Courts—Subject-matter—Parties.*

Objections to jurisdiction are of two classes, between which there is a clear and well settled distinction: first, those relating to the authority of the court over the subject-matter; and, secondly, those relating to its authority over parties. Objections of the first class cannot be waived nor jurisdiction obtained by acquiescence. But in the second class the rule is different. The party exempt from jurisdiction may waive his personal privilege, and if he does so the jurisdiction of the court is complete. Thus if the defendant is not duly served with process or is a nonresident beyond the reach of process, or if served while temporarily exempt as a juror or party or witness, or member of the legislature, the proceeding as to him will be void or voidable on showing the facts. But if he waives his exemption and appears voluntarily, the jurisdiction of the court over him is thereafter beyond question.

*Divorce—Jurisdiction—Subject-matter—Cruel and barbarous treatment.*

The consent of the parties, even with the consent of the court added, cannot give the court jurisdiction of a libel in divorce based on the allegations of cruel and barbarous treatment or of indignities to the person, unless the libellant shall have resided in the state at least one whole year previous to the filing of his or her petition or libel. This prerequisite is not in the nature of a personal privilege or safeguard which the respondent may waive, or the court, in its discretion, dispense with.

Where at the time of a filing of a libel in divorce, the libellant has not been a resident of the state for one year, but subsequently by permission of the court she files an amended libel, in which she avers that her residence within the state is that of her husband and that she had resided in the state for a period of one whole year previous to the filing of the

amended libel, she is estopped on appeal from a decree in her favor, to deny the truth of such averments, or to demand that a strained construction be put upon them in order to defeat the jurisdiction she invoked, and to nullify the decree for which she asked.   In such a case the fact of her legal residence for one year in Philadelphia, is not contradicted by a statement in the amended libel that the " present residence of the libellant" is in Brooklyn, New York.

*Divorce—Subpœna—Amended libel—Appearance.*

Neither upon principle nor upon authority can it be declared as an unvarying rule that an appearance of respondent in the absence of due legal service of the subpœna in divorce is conclusive evidence of collusion.

Where a subpœna issued upon an original libel in divorce and it appears that the subpœna was duly served upon the respondent, that he entered his appearance, and that when the court permitted an amended libel to be filed, he filed an answer to the amended libel, and went to trial, it is immaterial that a subpœna was not issued and served on the respondent after the amended libel was filed.

*Divorce—Cruel and barbarous treatment—Evidence—Appeal by libellant from decree in her favor.*

On an appeal by a libellant in divorce from a decree in her favor the appellate court will not reverse the decree on the ground that the libellant alone was examined and testified mainly to conclusions of fact, where the libellant, described by the master as a refined woman, testified to a course of treatment on the part of the respondent beginning the day after their marriage and continuing during all the time they lived together, which she described as insulting, humiliating and degrading, and which caused her to suffer not only mental anguish, but physical pain and illness.

Argued Dec. 13, 1901.   Appeal, No. 251, Oct. T., 1901, by plaintiff, from decree of C. P. June T., 1901, No. 45, granting a divorce in case of Josephine C. English v. Abraham L. English.   Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.   Affirmed.

Libel for divorce.

The facts are fully stated in the opinion of the Superior Court.

Assignments of error considered by the court were as follows:

(10.)  The record shows that the court below never considered the master's report or took any action thereon.

There is fastened with a movable metal fastener a separate

piece of otherwise blank paper on which the following figures and words are indorsed:

45 J. 1901.

C. P. No. 5.

X

Approved

Martin

J.

6§ 15§ 1901.

Filed June 15, 1901.

C. B. R.

There is nothing on the face of this paper containing the names of the parties or stating that the thing approved is the master's report, nor does it appear in any way that the court had any session on June 15, 1901, or that the court at any time considered the master's report or that any judge of that court examined the report or ever saw it.

(11.) There is a paper on the record indorsed "Rule for divorce a. v. m. Filed June 17, 1901," etc.

This paper consists of the draft or form of a rule to show cause proposed to be made returnable Monday, July 1, 1901, as usually prepared by counsel, but this paper was never allowed by the court nor by any judge thereof, but is simply a blank paper, filed June 17, 1901, and having neither the name nor initials of any judge attached thereto.

On this original paper then filed there has been subsequently written in figures and words following:

"July 1, 1901. Rule absolute. RALSTON, J."

It does not appear that the entry thus made by Judge RALSTON was the act of the court, and in any event it was wholly nugatory, because it was an attempt on July 1, 1901, to make absolute a rule to show cause for a divorce a. v. m. when no rule to show cause had ever been granted.

(12.) The record shows that the libellant, at the time of the marriage resided in New York and that she resided there at the time the original libel was filed, and at the time the amended libel was filed, she had no actual residence in Pennsylvania, and under the adjudications theretofore made by the Supreme Court of Pennsylvania on the subject of residence of the libellant, the

court of common pleas No. 5 was charged with knowledge of the law which could not be imputed to the libellant, viz: that jurisdiction could not be founded upon the constructive residence of a wife at the domicile of her husband, when she had left him and returned to her original residence in the state of New York.

It was the business of the court below to know this, and because it did not know it, the appellant cannot be estopped from having the void decree set aside because she did not know that the court of common pleas No. 5 did not know the law as theretofore decided by the Supreme Court.

(13.) The decree purporting to have been made by the court below on July 1, 1901, is void because the entire proceeding is nugatory in that the same did not constitute " due process of law" as this term is understood by the constitution of the United States.

*James W. N. Newlin*, for appellant.—The court had no jurisdiction: Colvin v. Reed, 55 Pa. 375; Reel v. Elder, 62 Pa. 308; Starbuck v. Starbuck, 71 N. Y. Supp. 104; Scott v. Noble, 72 Pa. 119; Platt's App., 80 Pa. 501; Cheely v. Clayton, 110 U. S. 705; 4 Sup. Ct. Repr. 323; Atherton v. Atherton, 181 U. S. 155; Baily v. Baily, 44 Pa. 274; Kepner's App., 94 Pa. 74; Miltimore v. Miltimore, 40 Pa. 151; Kershaw v. Kershaw, 5 Pa. Dist. Rep. 551.

There is nothing whatever in the record as sent up by the court below to show that that tribunal at any time even saw the master's report, much less examined it and judicially approved the same.

There were no facts on which to base a decree: Detrick's Appeal, 117 Pa. 452; May v. May, 62 Pa. 206; Gordon v. Gordon, 48 Pa. 226; Butler v. Butler, 1 Pars. 329; Eshbach v. Eshbach, 23 Pa. 343; Klopfer's Appeal, 1 Monaghan, 81; Bay's Appeal, 4 Cent. Repr. 281; Van Dyke v. Van Dyke, 135 Pa. 459; Heilbron v. Heilbron, 33 W. N. C. 240.

The proceeding is void for want of jurisdiction apparent on the record: Bell v. Bell, 181 U. S. 175.

*Alex. Simpson, Jr.*, with him *Francis Shunk Brown*, for appellee.—Appellant cannot be allowed to appeal from a decree

in her own favor: Miltimore v. Miltimore, 40 Pa. 151; Baily
v. Baily, 44 Pa. 274; Kepner's App., 94 Pa. 74; Mortimer's
App., 9 W. N. C. 313; Ellis v. White, 61 Iowa, 645; 17 N. W.
Repr. 28; Elliott v. Wohlfrom, 55 Cal. 384.

No exceptions were filed or taken by appellant to the admissibility of evidence, to the findings of fact or conclusions of
law by the master or court, or to the decree entered, nor was
the court asked to reopen the proceedings, hence no appeal
lies: Clayburgh v. Clayburgh, 15 W. N. C. 365.

The assignments of error were either expunged from the
record or are not according to rule or both: Lynde v. Lynde,
181 U. S. 183; Murdock v. Memphis, 20 Wallace, 590.

Appellant cannot aver that there was no final decree and at
the same time maintain her appeal: Bigelow on Estoppel, 642;
Edwards's App., 105 Pa. 103.

If the libellant is a citizen of another state, and the respondent resides here, and especially if the wrong was done here,
she can pursue her remedy at the forum of his residence: Reel
v. Elder, 62 Pa. 315; Colvin v. Reed, 55 Pa. 375; Ames v.
Ames, 21 Pa. C. C. Rep. 257; Sherwood's App., 17 W. N. C.
338; Adgate v. Adgate, 4 Del. Co. 265; Com. v. Barnett, 199
Pa. 177; Nagle v. Nagle, 3 Grant, 156; Newbold's App., 2 W.
N. C. 472; Cheever v. Wilson, 9 Wall. 108; Atherton v. Atherton, 181 U. S. 155; Mitchell v. U. S., 21 Wallace, 350; Masten
v. Masten, 15 N. H. 159; Davis v. Davis, 30 Ill. 180; Kashaw
v. Kashaw, 3 Cal. 312; McDermott's Appeal, 8 W. & S. 251.

It has been repeatedly said that amendments in divorce proceedings do not require the various statutes of amendments
for their support, and hence an entirely new cause of action
may be thus introduced: Toone v. Toone, 10 Phila. 174; Clayburgh v. Clayburgh, 15 W. N. C. 365; A. v. B., 2 Pa. Dist
Rep. 393; Powers's Appeal, 120 Pa. 327.

In the present case, however, as the amendment did not
introduce a new cause of action, i. e., a different complaint of
injury, it would have been error to refuse it under the statutes
relatives to amendments: Cassell v. Cooke, 8 S. & R. 268;
Rodrigue v. Curcier, 15 S. & R. 83; Erie City Iron Works v.
Barber, 118 Pa. 6; Grove v. Barclay, 106 Pa. 154.

The evidence supported the decree: Flattery v. Flattery,
88 Pa. 27; Butler v. Butler, 1 Parsons, 329; Elmes v. Elmes,

9 Pa. 166; Detrick's Appeal, 117 Pa. 452; Melvin v. Melvin, 130 Pa. 6; Mason v. Mason, 131 Pa. 161; Brubaker v. Brubaker, 4 Pa. Dist. Rep. 185.

OPINION BY RICE, P. J., March 14, 1902:

This is an appeal by the libellant from a decree of divorce a vinculo matrimonii. It appears from the pleadings and testimony that the parties were married on April 10, 1900, in the city of New York, the libellant being at that time a resident of that city and the respondent a citizen of this commonwealth residing in Philadelphia. The original libel was filed on March 28, 1901, less than a year after the date of the marriage, when the libellant's residence in this commonwealth began. A subpœna was awarded by the court and duly served upon the respondent, who entered his appearance by counsel. On May 21, 1901, the court granted the libellant "leave to withdraw from the record the libel heretofore filed in this cause and file the within libel as an amended libel therein." This charged, as did the original, that the respondent had, by cruel and barbarous treatment, endangered the life of the libellant, and had offered such indignities to her person as to render her condition intolerable and life burdensome and thereby had forced her to withdraw from his house and family. The respondent filed an answer to the amended libel denying these allegations, but not denying the allegations as to the libellant's residence and citizenship; a master was appointed before whom her testimony was given, the respondent appearing at the hearing by counsel; and on July 1, 1901, the cause terminated in a decree of divorce. On November 1, following, the libellant took this appeal. In view of some of the questions raised, it seemed to us important thus to refer in detail to the proceedings and the dates.

On or about the day the appeal was taken, and before the record was returned, the appellant filed a paper entitled in the caption "assignment of error," to which the appellee excepted. Upon consideration of his exceptions and upon inspection of the paper, a rule was granted upon the appellant "to show cause why said paper should not be expunged from the records of the court." This rule was made absolute. This order applied in terms, and was so intended, to the whole paper. We allude to this matter, not with any intention of commenting on the

paper or of showing the propriety of the order referred to, but for the sole purpose of showing that the only assignments of error before us are those which were filed after the record was returned. But these assignments raise the only questions which, in any view that may be taken of our jurisdiction, a libellant can raise upon an appeal taken by her from a decree in her favor.

The Act of June 11, 1891, P. L. 295, as did the act of March 13, 1815, 6 Sm. L. 286, provided, that " either of the parties, in any suit or action for divorce now pending or that shall hereafter be brought, after the final sentence or decree, may appeal therefrom to the Supreme Court of the proper district," etc. This appellate jurisdiction was transferred to the Superior Court by the Act of May 5, 1899, P. L. 248. As a prerequisite to an appeal, the appellant, or some one for him, must make and file an affidavit, that he has " suffered injustice by the sentence, order, judgment or decree " from which he appeals: Act of May 19, 1897, sec. 1, P. L. 67. Manifestly, a plaintiff who has obtained a valid judgment or decree for all that he claimed cannot allege that he has " suffered injustice " by the judgment or decree. Hence, such person cannot appeal, and this we take it, is as true of a proceeding in divorce as of any other civil proceeding, notwithstanding the generality of the language of the act of 1891, supra. But in case of a decree of divorce, not merely voidable for error or irregularity, but absolutely void for want of jurisdiction in the court that pronounced it, a different question is presented. " When the jurisdiction does not exist, and usurpation takes its place, then all the acts of the tribunal are void ' and of none effect,' and may be so treated in any collateral proceeding: Voorhees v. Bank of the United States, 10 Peters, 449 ; Phillips's Appeal, 10 Casey, 489. Where there is no jurisdiction there is no authority to pronounce judgment ; and consequently a judgment so entered is so but in form and similitude, and has no substance, force or authority : " Miltimore v. Miltimore, 40 Pa. 151. An appeal by the libellee from such a decree would not be dismissed, because, being a nullity, it did him no injury. This is too plain for argument. But such a decree is no more injurious to the libellee than to the libellant. It is a blot upon the record, and is effectual only to cloud the marital relation, and, possibly, raise doubt in the future as to the status and rights of

innocent third parties; it is wholly ineffectual to free either husband or wife from the marriage bond. It is to the interest of the public as well as of the parties—of one party as much as the other—that its nullity be judicially declared promptly. " The purpose and effect of a decree of divorce from the bond of matrimony by a court of competent jurisdiction are to change the existing status or domestic relation of husband and wife, and to free them both from the bond. The marriage tie, when thus severed as to one party, ceases to bind either. A husband without a wife, or a a wife without a husband, is unknown in the law : " Mr. Justice GRAY in Atherton v. Atherton, 181 U. S. 155. A decree absolutely null and void as to the libellee, because of want of jurisdiction in the court that pronounced it, but binding upon, and not even questionable upon appeal, by the other party, would be an anomaly. The only plausible argument in favor of recognizing the possibility of such a thing, is that the person invoking the jurisdiction of a court ought to be estopped to deny it upon appeal; but this is not a rule of universal application, and upon principle it ought not to be extended to a decree of divorce, where upon the face of .the record itself it appears that the court was without jurisdiction to even entertain the libel. It is our opinion that we have jurisdiction to determine whether this is such a case, and, if it is, to set aside the decree, notwithstanding the fact that the appeal was taken by the libellant. But the libellant cannot complain of mere irregularities which do not affect the validity of the decree.

There is nothing in the Act of March 10, 1899, P. L. 8, empowering the court of common pleas to appoint masters in divorce proceedings, which makes the formal approval of the master's report an essential prerequisite to a valid decree. Nor is there any statute requiring a rule to show cause why divorce should not be decreed to issue and be made absolute before a decree may be made. We assume that there is such a rule in the court below but that it was complied with, as well as that the master's report was approved, is to be presumed from the following docket entries : " June 15, 1901, master's report filed . and approved : June 17, 1901, rule for divorce, a v. m. ; June 17, 1901, proof of service of final rule filed ; July 1, 1901, rule absolute, divorce decreed and proclamation made." The papers

referred to in the tenth and eleventh assignments, although informal, are entirely consistent with the record kept by the prothonotary, to which record, even in the absence of such papers from the files, full faith and credit must be given on appeal or in any collateral proceeding.  "Every court of record is the guardian and judge of its own records.  It is clothed with full power to control and inquire into them, and to set them right, if incorrect.  They are placed in the custody of an officer, . . . . whose duty it is to preserve them pure and regular; who is sworn to perform that duty, and required to give security; and who is at all times subject to the supervision of the court.  For any criminal alteration of the record, he and all concerned would be subject to infamous punishment by the act of 1700, as well as the payment of double the damages sustained.  These are the precautions which the law provides for the faithful keeping of the records; and under these precautions, it gives full faith and credit to them, and will not allow their verity to be questioned.  Omnia praesumuntur rite et solemniter esse acta:" Hoffman v. Coster, 2 Whart. 453, 470.  In the same opinion from which we have quoted, SERGEANT, J., cites this apt illustration of the application of these familiar principles : A man may assign error, that whereas the court gave one judgment they ought to have given another judgment, but a man cannot say that they did not give such judgment, contrary to the words of the record.  So here, the allegation that the record shows that the court below never considered the master's report or took any action thereon, and the allegation that it does not appear that the order making absolute the rule to show cause was the act of the court, are not sustained by the record but are contradictory of it, and for that reason alone, even if there were no others, these two assignments must be dismissed.

"Objections to jurisdiction are of two classes, between which there is a clear and well settled distinction : first, those relating to the authority of the court over the subject-matter; and, secondly, those relating to its authority over parties.  Objections of the first class cannot be waived nor jurisdiction obtained by acquiescence. . . . But in the second class the rule is different.  The party exempt from jurisdiction may waive his personal privilege, and if he does so the jurisdiction of the court is complete.  Thus if the defendant is not duly served with

process, or is a nonresident beyond the reach of process, of if served while temporarily exempt as a juror or party or witness, or member of the legislature, the proceeding as to him will be void or voidable on showing the facts. But if he waives his exemption and appears voluntarily, the jurisdiction of the court over him is thereafter beyond question: " Commonwealth v. Barnett, 199 Pa. 161, 177. This clear statement of the distinction between the two classes of objections to jurisdiction may safely be taken as a guide in our consideration of the objections here raised.

It is objected in the first place that the court had not jurisdiction to hear and determine the cause, because the libellant was not a citizen of the state, who had resided therein for one whole year previous to the filing of the libel. This was true, in part at least, on the date of the filing of the original libel; and consent of a party as expressed by his appearance cannot in divorce create a jurisdiction over the subject-matter which the court would not otherwise have. No matter how expressed, consent of the parties, even with the consent of the court added, cannot give the court jurisdiction of a libel in divorce based on the allegations of cruel and barbarous treatment or of indignities to the person, unless the libellant shall have resided in the state at least one whole year previous to the filing of his or her petition or libel: Act of March 13, 1815, sec. 11, 6 Sm. L. 286. This prerequisite is not in the nature of a personal privilege or safeguard which the respondent may waive, or the court, in its discretion, dispense with. But at the time the amended libel was filed, May 21, 1901, this condition had been fulfilled; at least it was so alleged by the libellant in her libel and there is nothing in the answer or the testimony to show the contrary. She alleged " that immediately after their marriage," April 10, 1900, " the libellant and the respondent resided together in Philadelphia in the state of Pennsylvania and have since resided at Philadelphia in the state of Pennsylvania; " also, that " her residence within the state of Pennsylvania is that of her husband as hereinafter set forth" (No. 2018 Green street in the city of Philadelphia), " and that she has been a citizen of the state of Pennsylvania and hath resided therein for a period of one whole year previous to the filing of this amended libel." True, she alleged that her " present residence," that is, on the

date the amended libel was sworn to, May 4, 1901, and also on the date it was filed, May 21, 1901, was in the borough of Brooklyn, New York; but this averment is in nowise contradictory of the averment above quoted as to a year's residence in the commonwealth, or of her testimony : " My legal residence is that of my husband at 2018 Green street, Philadelphia." The fair construction of these averments taken together, and the construction which she impliedly asked the court to put upon them, is, that she had not given up the residence she had acquired in Pennsylvania. As already intimated, it may be that the libellant is not estopped to deny the jurisdiction of the court, if the facts alleged in her libel show that the court had not jurisdiction, but, having solemnly sworn that she had resided in the state for one whole year before the filing of the amended libel, and that this was still her legal residence, she is estopped, on appeal, to deny the truth of those averments or to demand that a strained construction be put upon them in order to defeat the jurisdiction she invoked, and to nullify the decree she asked for. By natural and reasonable intendment the allegations of her amended libel were sufficient to give the court jurisdiction of the subject-matter (Ames v. Ames, 7 Pa. Superior Ct. 456), and this jurisdiction attached when the court directed it to be filed in place of the original libel. But it may be conceded, that something more was necessary in order to acquire jurisdiction over the respondent. We therefore come to the consideration of the second objection.

It is objected that the decree is void and of no effect because a subpœna was not issued and served on the respondent after the amended libel was filed. But it is to be borne in mind, that the subpœna issued upon the original libel had been duly served upon him, that he had entered his appearance to the action, and that he filed an answer to the amended libel and went to trial without raising the objection. In any other civil proceeding that can be mentioned, this would be a submission by the respondent to the jurisdiction of the court and would be as effectual to bring him within it as personal service of the process. The case of Scott v. Noble, 72 Pa. 115, is not in point. A joint suit was commenced in Massachusetts against Grafton, a resident, who was served, and Noble, a nonresident, who was not served. The court made an order that the plain-

tiff give notice to Noble of the pendency of the action by serving him with a copy of the order. Noble, in Pennsylvania, indorsed on the order an acceptance of service. It was held in an action brought in this state on the judgment obtained in Massachusetts that the acceptance of service did not give the court of the latter state jurisdiction over Noble. The writ being void extraterritorially the acceptance of service rose no higher than would service of it outside the state; it was not tantamount to an unqualified appearance to the action. This distinction was pointed out in the opinion. On the other hand, where the respondent had accepted service of the subpoena and had filed an answer denying the allegations of the libel and a replication had been filed and the cause was about to be called for trial, it was held too late to withdraw the answer and to plead that the libel was not filed in the county where the respondent resided. LEWIS, A. J., said: "What is this but a trial of a local suit in the wrong county? Conceding for the argument, but without deciding the point, that the wife ought to have filed her libel for divorce in the county where her husband resides, the right of the husband to a trial in that county was a personal convenience which he might waive. The objection touches his privileges rather than the jurisdiction of the court, for the latter extends over the subject-matter of divorces:" Nagle v. Nagle, 3 Grant (Pa.), 155. See also Newbold's Appeal, 2 W. N. C. 472, Magee v. Pennsylvania, Schuylkill Valley R. R. Co., 13 Pa. Superior Ct. 187, and cases there cited. A general and unqualified appearance is a waiver of all defects or irregularities affecting the notice, process or service necessary to obtain jurisdiction over the defendant: 1 P. & L. Dig. of Dec. Col. 1153. This is the well established general rule. In divorce proceedings, however, it is subject to qualification because of the well recognized principle, often expressed in the words, "The commonwealth is always the unnamed third party to the proceeding." Divorces are granted on public grounds and not to suit the mere desires of the parties. Hence, suspicious circumstances tending to show collusion will be closely scrutinized by the courts. An acceptance of service after it is too late to make a valid service or an appearance notwithstanding a fatal defect in the service of the writ, or in the publication, it may be conceded, is a circumstance suggestive of collusion, which

may be taken into consideration in connection with other circumstances in determining that question of fact. But no authoritative Pennsylvania decision has been called to our attention, and we know of none, in which it has been held that such an act, although voluntary and intended as well as calculated to facilitate the bringing of the case to a hearing, is to be taken upon appeal or in a collateral proceeding as conclusive proof of collusion, and is therefore of no effect. Upon this subject, Mr. Bishop says: "Obviously, also, the public cannot be interested to interpose technical objections, and being always present in court by the judge, it cannot be taken by surprise for want of notice. Therefore, all questions preliminary to the hearing, such as relate to the service of process when the defendant has actual notice and appears, waiver of service, amendments and other things of this sort, may be governed by the same judicial rules which are established to subserve justice between parties in other causes:" 2 Bish. Marriage and Divorce (5th ed.), sec. 237. Neither upon principle nor upon authority can it be declared as an unvarying rule that an appearance, in the absence of due legal service of the subpœna, is conclusive evidence of the collusion. Where every reasonable inference of collusion is excluded, as is the case here, we can see no substantial reason for refusing, after final decree, to give such act the effect ordinarily accorded to it in civil proceedings. We, therefore, conclude that the court had jurisdiction of the parties and the subject-matter.

Finally, it is urged that the libellant was not sufficiently specific in detailing in her testimony the acts constituting the intolerable treatment alleged in the libel. As has been declared repeatedly, marriage is not a mere personal relation but a public institution, on the purity and integrity of which the welfare of society depends and for this reason marriages cannot be dissolved by the consent of the parties, nor can the court enter a decree of divorce by default in the absence of evidence to support the charge, or upon evidence so flimsy as to compel the conclusion that the alleged cause for divorce does not exist. But this is not such a case. The libellant testified to a course of treatment on the part of the respondent, beginning the day after their marriage and continuing during all the time they lived together, which she described as insulting, humiliating and de-

grading—and to a refined woman it could not be otherwise— and which, as she alleged, caused her to suffer, not only mental anguish, but physical pain and illness. Upon this point the master says: " The appearance of the libellant is that of a refined woman who undoubtedly would be much affected by such treatment as the testimony in this case presents, and it is more than probable that her health would be permanently injured if the treatment should be continued for any length of time." Having submitted her cause to a court of competent jurisdiction which has credited her testimony and decided the cause in her favor, it is not for her to complain, while still asserting the truth of the allegations of her libel and of her testimony, that she alone was examined and testified mainly to conclusions of fact.

The decree is affirmed.