## Shaw v. Shaw, Appellant.

*Divorce—Desertion—Domicile—Jurisdiction.*

A domicile in Pennsylvania is not lost by occasional visits to other states, where there is no evidence to warrant a finding that the libelant intended to establish a residence without the State.

*Divorce—Desertion.*

A divorce on the ground of desertion is properly awarded, where the respondent has failed to provide a home for his wife and children, and in answer to her offers to live with him imposed conditions, which he knew she would refuse, and has by his course of conduct clearly demonstrated that he had resolved to make a temporary separation an excuse for refusing to resume marital relations.

Argued Nov. 20, 1918. Appeal, No. 163, Oct. T., 1918, by respondent, from decree of C. P. No. 5, Philadelphia Co., March T., 1915, No. 83, granting a divorce in the case of Lillian A. Shaw v. Arthur D. Shaw. Before PORTER, HENDERSON, HEAD, TREXLER and WILLIAMS, JJ. Affirmed.

192        SHAW *v.* SHAW, Appellant.

Libel in divorce. Before MONAGHAN, J.

The case was referred to Edwin M. Abbott, Esq., as master who recommended a divorce. On exceptions to the master's report the court dismissed the exceptions and granted a divorce.

*Error assigned* was decree of the court.

*John C. Hinckley,* for appellant, cited: Hunnings v. Hunnings, 55 Pa. Superior Ct. 261; Hamilton v. Hamilton, 62 Pa. Superior Ct. 373; English v. English, 19 Pa. Superior Ct. 587; Ames v. Ames, 7 Pa. Superior Ct. 456; Neely v. Neely, 131 Pa. 552; Ingersoll v. Ingersoll, 49 Pa. 249; McCampbell v. McCampbell, 64 Pa. Superior Ct. 143.

*William T. Connor,* and with him *John R. K. Scott,* for appellee.

OPINION BY PORTER, J., July 17, 1919:

This is an appeal from the decree of the court below granting the libelant a divorce upon the ground of wilful and malicious desertion. This appeal raises two questions. First,—Was the libelant a resident of the State of Pennsylvania for one year prior to the filing of her libel? Second,—Did the evidence sustain the charge of desertion?

The libelant and the respondent had each been residents of the City of Philadelphia from childhood until the time of their marriage, on November 7, 1908. Immediately after their marriage they cohabited as man and wife in Philadelphia for two years; they then went to Baltimore, where the husband had obtained a position, and lived in that city for about fourteen months, they then returned to Philadelphia and lived there for about a year; they then removed to Flushing, Long Island, where the husband had obtained a position, and there resided for about seven months; and they returned to

Philadelphia and lived in the home of the respondent's parents until the 15th of July, 1913. The libelant, respondent and their two children during the time they were residing with the respondent's parents occupied one room. The libelant was pregnant at the time and expected to be delivered of a child in about two months; she was informed that some relatives of the husband's family were about to visit his parents and would be expected to use the room which she was then occupying with her husband and children. The respondent was without means at the time and the mother of the libelant had arranged that the latter should go to a hospital about the first of September, 1913, and there remain until after the birth of the child, the mother to pay the hospital charges. Her mother had taken a house not far from that of the respondent's parents for the period of two months, and the libelant, upon learning that the respondent's parents expected visitors, arranged to go and stay at the house of her mother, until the time when she was to go to the hospital, telling the respondent that he could come to the house of her mother and there have his meals, and she did go to the house of her mother on July 15, 1913. The parties have never since that time cohabited as man and wife. The respondent refused to visit his wife at the house of her mother. The libelant went to the hospital the first of September, gave birth to a child a few weeks later and remained in the hospital until October. After leaving the hospital she joined her mother at the "Dust-pan," presumably a hotel or boarding house, in Chestnut Hill, and her mother there provided for her and her children, and paid her expenses at the hospital. The husband had told the libelant that he wished her to return to the residence of his parents, but when, shortly afterwards, she told him she was willing to comply with his wishes and go and live with him at the home of his parents, he told her that it would not then be convenient for them to receive her. The respondent admitted, in his testimony before the master, that he had never after that

time made his wife any definite offer of a home. Shortly after this the respondent secured a position in Detroit and went to that city. He wrote his wife stating that he was coming on for Christmas and suggesting that she and the children go back with him. She wrote a kindly letter in reply to this in which she said that she did not think it would be wise to take three children, two of them babies, to that cold climate in the middle of winter, that if he was still in Detroit in the spring, that would be a much better time to make the change. There was nothing in this letter to indicate that the wife entertained any unfriendly feeling toward her husband or was not willing to join him at any time that he provided a home for her. During the time that the respondent was in Detroit, his father wrote to the libelant that she could have a home in his house, the libelant replied to this letter saying that she thought it was better for her and the children to remain with her mother. It is here proper to observe that the respondent was not at that time at his father's house, and this offer of the father cannot be taken as an offer of this respondent to resume marital relations with his wife. The respondent subsequently visited his children at rare intervals, but never made any attempt to establish a home for his wife and children or to resume marital relations with the libelant. He never contributed or offered to contribute one penny to the support of his wife and children, until compelled to do so by an order of the Municipal Court, in June, 1915. In January, 1915, this libel was filed, but the libelant still seemed to entertain the hope that a reconciliation might be effected and marital relations resumed and took no steps to force this proceeding to an issue for over two years, when a master was appointed. The libelant, in March, 1915, told the respondent that she was ready to go back with the children and live with him, at his father's house and he then told her that his father's house was not open to her, this the libelant and another witness testified to, and the respondent admitted it to be true. The respondent in his

testimony, while asserting that he was willing to take his wife back as soon as his income was sufficient to permit him to do so, admitted that he had an income of about three thousand dollars a year, and said that he could not provide a home for himself, his wife and their three children of more than two rooms. He testified that he was only willing to provide these limited quarters upon condition that his wife would live in a home separate from her mother, "without any influence or gifts from her mother." Here was a respondent asserting that he had not the means to provide a home for his wife, although his income was three thousand dollars a year, and yet at the same time objecting to his wife even receiving gifts from her mother. It seems manifest that it was not his desire or intention to provide any home for his wife and that he coupled this condition with the offer for the very purpose of presenting it in a form which he believed his wife would decline. It is our opinion that even if the wife had accepted this offer, it would have been withdrawn, just as his offer of a home at his father's was withdrawn when she agreed to accept that. The circumstances under which the libelant, on July 15, 1913, left the home of respondent's parents and went to that of her mother, did not of themselves involve a malicious desertion of the libelant by the respondent, but the course of conduct pursued by the appellant subsequently clearly demonstrates that he had resolved to make that temporary separation the excuse for refusing to resume marital relations with his wife and the refusal to subsequently contribute anything to her support or provide her with a home. This disposes of the second question involved; the evidence was sufficient to sustain the charge of wilful and malicious desertion.

The parties were residents of and domiciled in the State of Pennsylvania at the time the cause for divorce arose, in this State the respondent has continuously resided, and the subpœna was here served upon him. The desertion had occurred more than one year prior to the

filing of the libel.   The libelant had during the greater part of that year been actually personally present in Pennsylvania.   She had made two visits to her mother who was temporarily staying at a hotel in Atlantic City and one visit to her mother, at Plainfield, New Jersey, but during all this time she had a residence in Philadelphia to which she made visits of two or three weeks and to which her mail was addressed.   There is nothing in the evidence which would warrant a finding that either the libelant or her mother had intended to take up a residence, with the purpose of there remaining, outside of the State of Pennsylvania.   The libelant was dependent on her mother for support and she was practically compelled to make these visits to her mother wherever the latter might be temporarily staying.   The court had jurisdiction of the parties, as well as of the subject-matter : Ames v. Ames, 7 Pa. Superior Ct. 456; Hunnings v. Hunnings, 55 Pa. Superior Ct. 261.

The decree is affirmed.