## Goga v. Goga.

*Divorce—Desertion—Residence for one year—Jurisdiction—Acquiescence of respondent—Evidence—Acts of March 13, 1815, 6 Sm. Laws, 286, April 18, 1843, P. L. 340, April 26, 1850, P. L. 590, May 8, 1854, P. L. 644, March 9, 1855, P. L. 68, April 22, 1858, P. L. 450, April 28, 1903, P. L. 326, and May 9, 1913, P. L. 191.*

1. After the passage of numerous acts, it is now the settled law of Pennsylvania that a libellant in divorce must bring himself or herself within the jurisdiction of the courts of this State by showing at least that he or she has acquired a *bona fide* residence in the Commonwealth for the term of one whole year prior to and immediately preceding the filing of the libel; the acquisition of such residence is a condition precedent to the dissolution of the marriage tie by a Pennsylvania court.

2. The statutory prerequisite of residence for a year in the State is not in the nature of a personal privilege or safeguard which the respondent may waive and give the court jurisdiction, or which the court in its discretion may waive.

3. The burden of proof to show the jurisdictional fact of residence is on the libellant.

4. Where a party never heretofore a resident of Pennsylvania comes from another state and here institutes an action for divorce against a spouse who is not, and never was, a resident of this State for an alleged cause of action arising in the state of comparatively recent departure by the libellant, the burden rests on such libellant to show by convincing evidence that he or she became a resident of this State with the intention of remaining herein and not for the purpose of securing a divorce.

5. The words *"bona fide,"* as used in the Act of May 8, 1854, P. L. 644, mean an intention to make the residence permanent and not merely temporary; that is, residence with domiciliary intent.

6. On a libel for divorce, where it appears that the cause of action occurred in another state, that the respondent never was in Pennsylvania, and the evidence that libellant had a *bona fide* residence in Pennsylvania before filing the libel is not clear, distinct and satisfactory, and the master makes no definite finding that such residence is in fact established, the case will be referred back to the master for further proceedings.

7. Legislation relating to residence of one year as a necessary prerequisite for divorce reviewed and considered.

Report of master in divorce. C. P. Montgomery Co., June T., 1923, No. 125.

*Evans, High, Dettra & Swartz,* for libellant.

WILLIAMS, J., March 24, 1924.—The petition, or libel, in divorce, affirmed and subscribed to by the libellant on June 26th, was filed on July 30, 1923. It represented that, on or about Dec. 28, 1921, the husband respondent wilfully, maliciously and without reasonable cause had deserted the wife libellant and absented himself from her habitation and had persisted in such desertion ever since and that the respondent, by his cruel and barbarous treatment, had endangered the life of the libellant. The petition showed, also, that the libellant was a citizen of this Commonwealth and had resided therein for one whole year previous to the filing of her said petition and libel.

The testimony discloses that, prior to the marriage from the bond of which the libellant seeks to obtain this divorce, she had already been married in Serbia; that, her former husband having been killed in the war, for the express purpose of entering into matrimony with the respondent, whom she had never seen, she left Serbia and came to this country; that she arrived at Cadiz, Ohio, where the respondent was living, on Nov. 3, 1921; that ten days later the marriage of the respondent and herself was solemnized; that almost immediately after the wedding the alleged cruel and barbarous treatment began and from thence progressively advanced until the 28th day of the next

ensuing month, the date of the desertion charged in the libel; that, about twelve days after the respondent had separated himself from the libellant, she went to Columbus, Ohio; that, "in July, 1922," she moved to the City of Lebanon, this State, and that she remained there until sometime during the month of the following October, when she came to the village of Swedeland, Upper Merion Township, this county, where ever since she has been.

If the libellant did not reach Lebanon until "in July, 1922," she may never have set foot upon the soil of Pennsylvania before the 31st day of that month, in which event she had not been a resident of this Commonwealth for one year previous to the filing of her petition in divorce on July 30, 1923.

The British common law was adopted by the several states at the time of the establishment of the United States as an independent nation. Then matrimonial causes in England were within the exclusive jurisdiction of the ecclesiastical courts. As these courts derived their jurisdictional authority from the church, in the determination of matrimonial causes almost exclusive application was made of the canonical law. But ecclesiastical courts never were made a part of the judicial system of Pennsylvania. Consequently, there being no ecclesiastical tribunal up to the time of the creation of courts with divorce jurisdiction, ecclesiastical law relating to divorce remained unadministered. For power to grant divorces we must look, therefore, not to the common law, but to our statutes: Getz v. Getz, 14 Dist. R. 69, 70 (1904), McIlvaine, P. J. (C. P. Washington Co.), and Starr v. Starr, 78 Pa. Superior Ct. 579, 583-4 (1922), *Per Curiam.*

The Act of March 13, 1815, § 1, 6 Sm. Laws, 286, said that when a marriage theretofore had been, or thereafter should be, contracted and celebrated between any two persons and it should be adjudged, in the manner thereinafter mentioned, that, *inter alia,* either party should have committed wilful and malicious desertion and absence from the habitation of the other, without reasonable cause, for and during the term and space of two years, or when any husband should have, by cruel and barbarous treatment, endangered his wife's life, in every such case it should and might be lawful for the innocent and injured person to obtain a divorce from the bond of matrimony. The 11th section of the said Act of March 13, 1815, following the old Act of 1785 (Lyon v. Lyon, 13 Dist. R. 623, 626 (1904), Sulzberger, P. J., Philadelphia Co., C. P. No. 2), declared that no person should be entitled to a divorce from the bond of matrimony by virtue of the said act who was not a citizen of this State and who should not have resided therein at least one whole year previous to the filing of his or her petition or libel—a provision manifestly intended to prevent a surreptitious use of the remedy: Dorsey v. Dorsey, 7 Watts, 349, 353 (1838), Gibson, C. J.

It is to be observed that said Act of March 13, 1815, made citizenship and residence separate qualifications and that, also, while residence was required for the minimum time prescribed by statute, no light whatsoever was thrown upon the meaning of citizenship: Lyon v. Lyon, 13 Dist. R. 623. Hence, notwithstanding the existence of said Act of March 13, 1815, before 1843, the courts of this State had no jurisdiction of a cause of divorce alleged to have been committed by the husband whilst his place of abode was in another state. This was true even where both husband and wife had been born, reared and married in Pennsylvania. For everything but the original obligation of marriage the law of the actual domicil at the time and place of the alleged injury was held to be the rule: Dorsey v. Dorsey, 7 Watts, 349.

The Act of April 18, 1843, P. L. 340, provided, however, that the word "citizen," used in the said 11th section of said Act of March 13, 1815, should

not be construed to apply to any woman who should have had a *bona fide* residence in this State at least one whole year previous to filing her petition or libel.

Seven years later the second legislative assault upon Dorsey *v.* Dorsey was made by the Act of April 26, 1850, P. L. 590, the 6th section (P. L. 591) whereof said it should be lawful for the several Courts of Common Pleas of this Commonwealth to entertain jurisdiction of all cases of divorce from the bonds of matrimony for the cause of wilful, malicious and continued desertion by either of the parties from the habitation of the other without reasonable cause, notwithstanding the parties were, at the time of the occurrence of said cause, domiciled in any other state: Provided, That no such divorce should be granted unless the applicant therefor should be a citizen of this Commonwealth, *or* should have resided therein for the term of one year, as provided for by existing laws.

An important and significant feature of the said Act of April 26, 1850, is to be found in the change of language of said 11th section of said Act of March 13, 1815, respecting citizenship and residence, the word "and" being removed from the earlier act and, in lieu thereof, the word "or" being substituted by the later statute, so that the two qualifications of citizenship and residence hitherto observed no longer remained cumulative, as they had stood ever since 1785, but, on the contrary, in accordance with the tendency already suggested by the said Act of April 18, 1843, became at least alternative if not practically synonymous: Lyon *v.* Lyon, 13 Dist. R. 623.

In four more years the general assembly again intervened and passed the Act of May 8, 1854, P. L. 644, section 2 of which expressly enacted that the word citizen, used in said 11th section of said Act of March 13, 1815, should not be so construed as to exclude any party who should for one year have had a *bona fide* residence within the Commonwealth previous to the filing of his or her petition or libel.

The following year the legislature, by the Act of March 9, 1855, P. L. 68, declared that it should be lawful for the said courts to entertain a jurisdiction identical with that extended by the 5th section of said Act of April 26, 1850, *inter alia*, for the cause of personal abuse, notwithstanding the parties were, at the time of the occurring of said cause, domiciled in another state: Provided, That no application for such divorce should be made unless the applicant therefor should be a citizen of this Commonwealth, or should have resided therein for the term of one year, as provided for by the existing laws of this Commonwealth; and, three years afterward, to the said Act of March 9, 1855, the general assembly enacted a supplement, the Act of April 22, 1858, P. L. 450, which proclaimed that the jurisdiction conferred in and by said Act of March 9, 1855, was thereby extended to all cases of divorce from the bonds of matrimony, for the causes therein mentioned, where *either of* the parties had been or might be, at the time of the occurring of said cause, domiciled in another state: Provided, That no application for such divorce should be made unless the applicant therefor should be a citizen of this Commonwealth, or should have resided therein for the term of one year, as provided by the existing laws of this Commonwealth.

In spite of the passage of the said Acts of April 18, 1843, P. L. 340, April 26, 1850, P. L. 590, May 8, 1854, P. L. 644, March 9, 1855, P. L. 68, and April 22, 1858, P. L. 450, so long after the approval thereof as 1893, at least two jurists of no mean parts held that where the libellant and respondent had been married in a foreign jurisdiction, in which, also, the alleged cause of divorce had arisen and, subsequently, the libellant had moved to the State of Pennsyl-

vania and thereafter filed a libel for divorce, but, so far as the testimony showed, the respondent was not and never had been within the confines of the Commonwealth, the courts of Pennsylvania were without jurisdiction: Davis v. Davis, 12 Pa. C. C. Reps. 541 (Allegheny Co.), Porter, J., and Burdick v. Burdick, 2 Dist. R. 622 (McKean Co.), Morrison, J. See, likewise, Austin v. Austin, 4 Pa. C. C. Reps. 368 (1887), Archbald, J. (Lackawanna Co.), and Nigh v. Nigh, 2 Pa. C. C. Reps. 574 (1886), Morrow, P. J. (Bradford Co.).

To said Act of April 26, 1850, in 1903, the legislature enacted a supplement, the Act of April 28, 1903, P. L. 326, which said that it should be lawful for the several Common Pleas Courts of the State to entertain jurisdiction of all causes of divorce, *inter alia*, for the cause of wilful and malicious desertion on the part of either the husband or wife and absence from the habitation of the other, without reasonable cause, for and during the space of two years, as provided for in the act of assembly to which the said Act of April 28, 1903, was a supplement; or when any husband should have, by cruel and barbarous treatment, endangered his wife's life, notwithstanding the said causes of divorce had occurred or should thereafter occur, among other places, in a state subject to the jurisdiction of the United States: Provided, That no application for such divorce should be made unless, at the time the said cause or causes of divorce occurred, the applicant therefor was a citizen of this Commonwealth: Provided, further, That the said applicant should have resided therein for the term of one year, as provided for by the existing laws of the Commonwealth.

Nevertheless, more than five years later, the Superior Court seemed to doubt whether the statutes of Pennsylvania, not omitting said Act of April 28, 1903, empowered the courts to decree a divorce for a cause which had occurred in another state, where the parties were then domiciled, and thereafter the libellant left the common abiding place, came into Pennsylvania and resided here one year, but the respondent remained in what formerly had been the place of abode of both, never came into Pennsylvania, was not served with process and did not appear in the proceedings: Cooper v. Cooper, 37 Pa. Superior Ct. 246, 249 (1908), Porter, J.

The Act of May 9, 1913, P. L. 191, provided, in section 1, that the several Courts of Common Pleas should have jurisdiction, in any action in divorce, for any cause then or thereafter allowed by law, notwithstanding the fact that the marriage had occurred outside of this Commonwealth, that both parties had been, at the time of the occurrence of said cause, domiciled without the Commonwealth and that the respondent had been served with the subpœna only by publication as required by law, and, in section 2 (P. L. 192), that the said courts should also entertain jurisdiction of all cases of divorce from the bonds of matrimony, for any cause then or thereafter provided for by law, when the libellant or applicant for such divorce should, at the time of filing the petition or libel in divorce, have been a resident of this Commonwealth for one year previous to the filing of the petition or libel in divorce.

From the foregoing it would appear that in Pennsylvania, despite the long struggle of the legislature against the judicial branch of the state government for a more liberal interpretation of the divorce laws, a libellant must still bring herself within the jurisdiction of a state court by showing, at least, that she had acquired in the Commonwealth a *bona fide* residence for the term of one whole year prior to and immediately preceding the filing of her libel and that the acquisition of such residence is a condition precedent to dissolution of the marriage tie by a Pennsylvania court. Were it not so there would be nothing to prevent the exhibition of a libel by a proctor and without the pres-

ence of the complainant: Dorsey v. Dorsey, 7 Watts, 349, 350. Even consent of the respondent, as expressed by his appearance, cannot, in divorce, create jurisdiction over a subject-matter which otherwise the court would not possess and consent by the respondent, no matter how expressed and although coupled with the consent of the court itself, cannot give jurisdiction of a libel in divorce unless the libellant shall have resided in the State at least one whole year previous to the filing of her petition. The statutory prerequisite of residence for a year in the State is not in the nature of a personal privilege or safeguard which the respondent may waive or with which the court, in its discretion, may dispense: English v. English, 19 Pa. Superior Ct. 586, 596 (1902), Rice, P. J.; it is an essential to jurisdiction over subject-matter: Barning v. Barning, 46 Pa. Superior Ct. 291, 294-5 (1911), Rice, P. J. Actual residence for one year within this State is an absolute prerequisite for a divorce and unless the libellant shall have resided in Pennsylvania at least one whole year previous to filing the libel, no State court has jurisdiction of the libel: Starr v. Starr, 78 Pa. Superior Ct. 579.

The burden of proof to show the jurisdictional fact of residence is on the libellant: Frazer v. Frazer, 71 Pa. Superior Ct. 382, 383 (1919), Head, J. If a libellant moves into this State and files a libel in which it is shown that she is a citizen of Pennsylvania, the burden is upon her to prove that her place of residence was within the Commonwealth during the entire year immediately preceding: Heath v. Heath, 44 Pa. Superior Ct. 118, 123 (1910), Porter, J., and Devine v. Devine, 50 Pa. C. C. Reps. 6, 11 (1921), Lindsey, P. J. (C. P. Warren Co.). Where a party, never heretofore a resident of Pennsylvania, comes from another state and here institutes an action for divorce against a spouse who is not and never was a resident of this State, for an alleged cause of action arising in the state of comparatively recent departure by the libellant, the burden rests on the complainant of showing, by convincing evidence, that she became a resident of this State with the intention of remaining herein and not for the purpose of securing a divorce. In such case it is the duty of the court carefully to examine the evidence relating to residence and to require that the good faith of the applicant in respect to residence should be satisfactorily established: Abbott v. Abbott, 75 Pa. Superior Ct. 483 (1921), Henderson, J.

The evidence submitted is a part of the whole record, from the four corners of all of which jurisdiction must appear: English v. English, 19 Pa. Superior Ct. 586. The mere fact that the libellant affirmed in her petition for a divorce that she had resided in the Commonwealth for the term of one year can neither circumvent nor defeat the statute when it clearly appears from the testimony that the statement affirmed to was false: Bok v. Bok, 20 Montg. Co. Law Repr. 129, 132 (1904), Swartz, P. J. The averment that the libellant resided in the State for one whole year previous to the filing of the libel does not stand, as to exclusiveness, upon a plane higher than that of any other essential allegation in the libel and, therefore, does not preclude the court from dismissing the petition for divorce if, upon and after examination of the whole record, it appears that the libellant did not so reside: Mauser v. Mauser, 59 Pa. Superior Ct. 275, 281 (1915), Rice, P. J.

Where the cause of divorce has occurred in another state and the complaining party proceeds in this State, the record must be free from ground for suspicion and the testimony as to residence of the libellant must be clear, distinct and satisfactory: Ausman v. Ausman, 67 Pitts. L. J. 112 (1918), Macfarlane, J. When the evidence fails so to establish the fact of residence, the court is without jurisdiction and the libel should be dismissed: Frazer v.

Frazer, 71 Pa. Superior Ct. 382. If the testimony as to the abiding place of the libellant is vague, indefinite or inconsistent and, hence, not sufficient to establish a *bona fide* residence for the year preceding the date of the filing of the libel, the petition must be dismissed for want of jurisdiction: Abbott *v.* Abbott, 75 Pa. Superior Ct. 483.

It is not the policy of our laws to make Pennsylvania a transitory resting place in which the annulment of a contract of marriage may be secured. All our statutes and decisions on the subject of divorce require that the libellant must affirmatively show that there has been a clear intention on her part to abandon forever her former residence in another state and to take up and make a later permanent one here. To this well-defined purpose must be joined an actual *bona fide* residence for one year within the Commonwealth previous to the filing of the libel. Each requirement is essential and all must combine before the court is warranted in executing a decree in divorce: Reed *v.* Reed, 30 Pa. Superior Ct. 229 (1906), Orlady, J., and Dulin *v.* Dulin, 33 Pa. Superior Ct. 4, 5 (1907), Orlady, J.

The statutory proviso that the applicant for a divorce should have been a resident of this Commonwealth for one year previous to the filing of her petition in divorce, when construed in connection with existing laws *in pari materia*, demands a *bona fide* residence *animo manendi*—a residence acquired with domiciliary intent—as distinguished from a mere coming into the State for the sole purpose of abiding here long enough to obtain a divorce and then returning to the former place of abode: Halpine *v.* Halpine, 52 Pa. Superior Ct. 80, 86 (1912), *Per Curiam*.

The words *"bona fide,"* as used in said Act of May 8, 1854, mean an intention to make the residence permanent and not merely temporary. Had the word "domicile" been employed instead of "residence," the phrase might have been consistent with non-residence. But the statute said "residence," not "domicile." "Domicile" is a matter of intention; "residence" is a physical fact. Hence, the term *"bona fide residence"* means residence with domiciliary intent, *i. e.*, a home in which the libellant actually lives: Starr *v.* Starr, 78 Pa. Superior Ct. 579.

The statutes of Pennsylvania, as interpreted by our courts, clearly provide that no person shall be entitled to a divorce who shall not have been a *bona fide* resident within the Commonwealth for at least one whole year previous to the filing of the libel. The divorce laws of Pennsylvania were not made for the benefit of non-residents, unless the statute clearly intends to include them: Starr *v.* Starr, 78 Pa. Superior Ct. 579.

No matter how we may argue or reason, at all times we are confronted with the proposition that, in Pennsylvania, an applicant for divorce must have maintained "a *bona fide* residence" within the Commonwealth for one year prior to the filing of the libel: Starr *v.* Starr, 78 Pa. Superior Ct. 579.

In the instant case, the marriage proven, the cruel and barbarous treatment charged and the desertion alleged—all took place in the State of Ohio. There is nothing to show that, prior to their marriage, either the libellant or the respondent had even entered, much less lived in, the State of Pennsylvania, or that, since the marriage, the respondent has ever seen any part of Pennsylvania. The libellant says that she now lives at No. 345 "A" Street, Swedeland, and that there she helps run a boarding-house. Her sole witness, a male relative, likewise living at Swedeland, says she came to the village "in 1922." Otherwise, the testimony is silent as to the residence of the libellant in the State for one year previous to the filing of her libel in divorce. If the evidence as to such residence on the part of the libellant is not inconsistent, at

least it is somewhat vague and most indefinite. Certainly it is not clear, distinct and satisfactory. It falls far short of carrying with it the conviction that, for one year prior to filing her petition, the libellant maintained within the State of Pennsylvania a *bona fide* residence.

The master finds, as a part of his second fact, that the libellant, from "July" until October, 1922, resided at Lebanon and that in the latter month she moved to Swedeland, where she still resides. He makes no finding that the libellant, at the time of filing her petition in divorce, had been a resident of this Commonwealth for one year previous to such filing. Just exactly three months ago this court held, in Scheffey v. Scheffey, 40 Montg. Co. Law Repr. 5, 7-8 [4 D. & C. .716], that the report of a master in divorce should be framed according to the rules for the preparation of reports of masters in chancery and, hence, should contain a specific finding of the existence of every element necessary for the establishment of a case by the libellant.

It is true that the third conclusion of law of the master is to the effect that the court has jurisdiction of both the parties and of the subject-matter, the former having resided in this State more than the required length of time and the latter having arisen in this State. But the facts with which the master buttresses his conclusion of law are palpably incorrect. So far as the party respondent is concerned, there is not a scintilla of testimony to show that he ever heard of the Commonwealth of Pennsylvania. With respect to the party libellant, according to the second finding of fact of the master himself, she may have resided in this State not more but less than the required length of time. As to the subject-matter having arisen in this State, neither cause of divorce occurred in Pennsylvania. Both arose at Cadiz, which, the evidence discloses, is the county seat of Harrison County, Ohio.

And now, March 24, 1924, the case is referred back to the master for the purpose of hearing additional testimony, if any be offered, and then of making further report to the court.