## Halpine, Appellant, *v.* Halpine.

*Divorce—Domicile—Desertion—Cause of action originating in another state.*

1. Where a husband and wife are domiciled in another state without any prior domicile or residence in Pennsylvania, and the wife comes into this state and files a libel for a willful and malicious desertion committed in the other state, she must show that she has acquired a residence here with domiciliary intent, as distinguished from a mere coming into the state with the sole intent to abide here long enough to obtain a divorce and then return to the former domicile.

2. In such a case the libel will be dismissed if it appears from the libelant's own testimony that she had no relatives here, nor occupation; that she was wholly unfamiliar with the neighborhood in which she lived; that she did not know the people in the house in which she stated she had resided for two years; that she gave two different street numbers to such house; and that she was contradicted by her own witness when she testified that rooms were rented in the house to other people than herself.

Argued Oct. 17, 1912.   Appeal, No. 126, Oct. T., 1912, by plaintiff, from decree of C. P. No. 5, Phila. Co., June Term, 1911, No. 1,352, dismissing libel in divorce in case of Alice E. Halpine v. Frank T. Halpine.   Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Libel for divorce.

The master, William T. Connor, Esq., filed the following report:

### FINDINGS OF FACT.

First.   The libelant, Alice E. Halpine, and the respondent, Frank T. Halpine, were married on October 17, 1897, at Indianapolis, Indiana, by the Rev. Dr. Simms, a minister of the Methodist Episcopal Church.

Second.   That the libelant and respondent have, since their marriage on October 17, 1897, lived at 300 West 119th street, New York city; 15 West 106th street, New York city, and 125 West 126th street, New York city.

Third.   At the time of the marriage of the libelant and

respondent she, the libelant, lived at Louisville, Kentucky, at which same place her husband, the respondent, also lived; after their marriage they went to live in New York city, N. Y., where they resided together until their separation on September 15, 1902, on which date the libelant went to live by herself at 101 West 9th street, New York city, where she resided for two years, leaving there to reside at Ramsey, New York, where she lived two months; going thence to Hoboken, N. J., where she resided for a year; then again moving to 107 West 104th street, New York city, N. Y., where she lived two years; from which place she removed to 143d street, New York city, where she lived two more years, when she stated she came to Philadelphia, where, according to her story, she resided for about two years prior to November 8, 1911.

In answer to questions asked her by the master, the libelant testified that she lived at 1326 South Second street, Philadelphia,—a house kept by a Mrs. Levin, where she had one room. On being examined by her attorney, she stated the address was 1236 South Second street; she said she did not live there continuously; that she had no business or occupation in Philadelphia, and she did not know the names of any persons living in the house in which she stated she resided. The master finds, as a fact, that she has not now and has not at any time had a bona fide residence in Philadelphia, such as would entitle her to successfully prosecute her suit in divorce.

Fourth. The libelant is thirty-two years of age, and the respondent is fifty-four years old.

Fifth. No children have been born of the marriage of the libelant and respondent.

Sixth. That the respondent without cause, deserted his wife, the libelant, on September 15, 1902, in the city of New York, and this leaving and abandoning of the libelant by the respondent would amount to a willful and malicious desertion, and would warrant the granting of a divorce to the libelant, if the court had jurisdiction in this case.

CONCLUSIONS OF LAW.

From the facts as above found, the master finds that the leaving and abandonment of the libelant by the respondent on September 15, 1902, in the city of New York, would constitute within the meaning of the law a willful and malicious desertion, and justify the granting of a decree in divorce, if the court had jurisdiction in this case.

The testimony on the question of desertion was given alone by the libelant, but in itself makes out a case of willful and malicious desertion, being an abandonment of the libelant without cause, and without there being an explanation offered by the respondent, and this, under the authorities, the master is of opinion is sufficient to make out a case of willful and malicious desertion.

That the testimony of the libelant alone, uncontradicted, is sufficient to make out a charge of willful and malicious desertion in a divorce case, seems to be uncontradicted.

In Carman v. Carman, 38 Pa. C. C. Rep. 219, the libelant asked for a divorce on the grounds of willful and malicious desertion, and the respondent was served; filed an appearance and an answer; and counsel for the respondent attended the meetings before the master.

The master, after hearing testimony, filed his report recommending that the libel be dismissed on the ground that the testimony of the libelant alone was insufficient to make out a case that would warrant the granting of a divorce. Exceptions were filed to the master's report, and in an opinion by Judge DAVIS, the exceptions were sustained, and it was held that the testimony of the libelant, standing alone, was sufficient on which to base a finding that a willful and malicious desertion had taken place.

On the question of the libelant's residence the libelant testified in answer to questions propounded by the master, that she lived 1326 South Second street, Philadelphia; that she had lived there about two years; that she occupied

one room in this house which was kept by a Mrs. Levin, the house being a private house,—"private family—they rent out a few rooms." She said she did not know anyone else renting rooms in the house, and that she was only acquainted with the family that had the house. She stated she and her husband never lived in Philadelphia, or anywhere in Pennsylvania; that she came here from New York on learning that her husband was here, and that she saw him on the streets in Philadelphia, in May, 1911. She said she was in no business, and followed no occupation. In answer to questions by her counsel, she said she did not know that her husband lived at 2120 North Thirtieth street, nor where he was living at the present time. That she was in New York city for a period of three weeks just a few weeks before the time of the holding of the master's meeting, being at Laurelton, Long Island; she stated that she had been in Indianapolis, Indiana, on a visit to relatives; that she had visited New York city, never, however, being away for a period of longer than three weeks at a time, and that she paid her room rent while she was away just the same.

In answer to questions by the master, after her counsel had completed his examination, she stated she spent about three months of the year away from Philadelphia, and that she kept all her clothing here in Philadelphia.

Alexander Levin, who was called as a witness to establish the residence of the libelant, gave the address as 1236 South Second street, Philadelphia. He stated that he was a solicitor for the "Evening Telegraph" and had known the libelant since July, 1909; that he lived with his parents at 1236 South Second street, where Mrs. Halpine lived; where she spent almost all of her time except when she went away on a trip, when she generally went to see friends in New York, and sometimes west for a short time; that when she goes away she sometimes stays a week, sometimes two weeks, and sometimes she might stay three weeks. That when she goes away on these trips, sometimes she takes a grip and sometimes she might take a

trunk, and that his parents rent out the room where Mrs. Halpine stays.

This testimony given on the residence of the libelant, is not sufficient to convince the master that the libelant has a real and bona fide residence in the city of Philadelphia. Until some considerable period of time after her husband left her, she remained in New York city, and came here less than two years before she filed her libel.

The residence which she testified she maintained here in Philadelphia was not one that had about it the marks of permanency, and her testimony with reference to this residence, particularly the fact that she gave two different numbers when referring at two different times to the house in which she lived; that she was unable to give the names of any people other than the landlady of the house in which she lived, or that she knew in the neighborhood in which she lived; and the fact that she and the witness called on her behalf, to establish residence, failed to agree with reference to the kind of house in which she was living, she stating that rooms were rented to a number of people, while the witness stated that a room was only rented to the libelant,—has forced the master to the conclusion that the testimony offered by the libelant, and on her behalf, to establish her residence, is not of such a character as would justify him in finding that she had in fact at the present time a bona fide residence in the city of Philadelphia, or that she was a resident and citizen of the state of Pennsylvania for one whole year prior to the time of the filing of her libel.

The master has examined the cases dealing with the question of residence, and the case that seems to go further than any other case is that of Reed v. Reed, 30 Pa. Superior Ct. 229, but this case can be readily differentiated from the case which has been referred to the master, and a careful reading of it will show that no reasons exist in the present case such as existed in Reed v. Reed, 30 Pa. Superior Ct. 229, to warrant the finding that a bona fide residence has been established. In the case of Reed v.

Reed, a valid reason was given by the libelant for her coming to Philadelphia and continuing to reside here, i. e., that she had been neglected in her former home at Brooklyn and that here in Philadelphia she had sympathetic relations, and was able to secure employment. In the Reed case it also appears that there was corroboration of the testimony of the libelant with reference to the residence maintained by the libelant, and in that case there was nothing in the testimony offered which was in any way conflicting, or which would throw discredit upon the persons giving the testimony.

In the present case, no reason is given by the libelant for her maintaining a residence here in Philadelphia; she apparently has no relatives here and she follows no occupation; she shows by her testimony that she is wholly unfamiliar with the neighborhood in which she lived, and does not even know the people in the house in which she stated she has resided for two years, and it is most apparent from her testimony that her residence was not like the residence of the libelant in the case of Reed v. Reed,—a continuous one, but one that entirely lacked permanency, and the witness called to corroborate her, rather than doing so, caused her testimony to appear more unworthy of credit and unreliable, by reason of the conflict of his testimony with the libelant's testimony.

The master, therefore, is of the opinion and so reports to your honorable court that the libelant has failed to establish that she is a bona fide resident and citizen of the state of Pennsylvania or that she was such for a period of more than one year prior to the filing of her libel, and for this reason the master recommends that the libel be dismissed.

Exceptions to the master's report were overruled, and a decree was entered dismissing the libel.

*Error asssigned* was decree dismissing the libel.

*Joseph Singer,* for appellant.—It is submitted that the finding of the master is unwarranted by the testimony

and by the law: Carman v. Carman, 20 Pa. Dist. Rep. 1; Reed v. Reed, 30 Pa. Superior Ct. 229.

No printed brief for appellee.

PER CURIAM, November 18, 1912:

The parties to this proceeding for divorce from the bonds of matrimony were at the time of the occurrence of the alleged cause, which was desertion, domiciled in the state of New York and neither, so far as appears, ever had any prior domicile or residence in Pennsylvania. Section 6 of the Act of April 26, 1850, P. L. 590, gives the courts of the commonwealth jurisdiction in such cases, but provides as a condition precedent to its exercise that "the applicant therefor shall be a citizen of this commonwealth, or shall have resided therein for the term of one year as provided by existing laws." Construing this clause in connection with existing laws in pari materia, it requires a bona fide residence animo manendi—a residence acquired with domiciliary intent—as distinguished from a mere coming into the state with the sole intent to abide there long enough to obtain a divorce and then return to the former domicile. This is the general interpretation of the words "resides" and "residence" as used in divorce statutes. See Hinds v. Hinds, 1 Iowa, 36, for an instructive discussion of that subject. Where the alleged cause for divorce is one not recognized as such by the law of the state in which it occurred, there are many obvious reasons for carefully scrutinizing the testimony as to residence and for holding that the bona fides of the applicant in that regard be satisfactorily established. The remarks of Chancellor GREEN upon this subject in Winship v. Winship, 16 N. J. Eq. 107, are quite pertinent. See also 2 Bishop on Marriage, Divorce and Separation (1891), secs. 102, 103, 104 and cases there cited. After careful consideration of the testimony of the libelant and the single witness called by her, we are of opinion that the learned master was right in concluding that the essential

fact was not established with that degree of certainty which our law contemplates. As shown by his report, this conclusion is not based solely on the omission to produce the corroborating evidence which presumably it was within the libelant's power to produce if she had acquired a bona fide residence in this commonwealth, but upon defects in her own testimony and its lack of harmony in a material particular with that of her witness. These are pointed out in his report, and it is not necessary for us to recite them here. It is sufficient to say that it is not necessary in this case, as it was in Reed v. Reed, 30 Pa. Superior Ct. 229, to go outside the record in order to raise any question affecting her credibility. In this, as well as in other important particulars, that case is plainly distinguishable from the present and does not control it.

The decree is affirmed.