Bock *v.* Bock, Appellant.

Argued November 18, 1947. Before RHODES, P. J., HIRT, DITHRICH, ROSS, ARNOLD and FINE, JJ. (RENO, J., absent).

*W. Bradley Ward*, with him *Lemuel B. Schofield, John E. Flynn* and *Thomas A. Foulke*, for appellant.

*Julian W. Barnard*, for appellee.

OPINION BY ROSS, J., April 20, 1948:

Respondent has appealed from the decree granting a divorce to his wife on the ground of indignities to the person. The master, after taking more than eleven hundred pages of testimony at twenty-five hearings extending over a period of one year and five months, recommended that the divorce be granted. Exceptions to the master's report were dismissed and a decree of absolute divorce was entered by the court below in an opinion written by Judge CORSON of the Court of Common Pleas of Montgomery County.

The parties were married on July 12, 1934 and resided together until the libellant left the home on September 15, 1943. She returned a few months later but left permanently on January 28, 1944. One child, Eric, was born to the parties on March 24, 1939. The libel was filed on March 2, 1944 and pursuant to a rule, a bill of particulars was subsequently filed, the bill consisting of sixty-four paragraphs setting forth in detail and specifically libellant's charges of indignities. No answer was filed to either the libel or the bill of particulars.

The fundamental characteristics of indignities are that they must consist of a course of treatment. The very essence of the offense is a course of conduct or treatment which by its continuity renders the condition of the innocent party intolerable and his or her life burdensome. As stated by Judge RHODES in *Monaco v. Monaco*, 160 Pa. Superior Ct. 117, at page 118, 50 A. 2d 520, at page 521: "We have repeatedly said that it is impossible to lay down a general rule for the determination of what indignities render the condition of the injured party intolerable and his life burdensome. Hahn v. Hahn, 135 Pa. Superior Ct. 39, 41, 4 A. 2d 821. The

circumstances of each case must largely determine whether the acts charged amount to such indignities as will justify the court in making a decree of divorce. However, indignities to the person, as recognized by the law, have certain fundamental characteristics which must be recognized in the appraisal of the evidence. In the first place, the indignities must consist of a course of conduct on the part of respondent. That conduct must have rendered the condition of the libellant intolerable and life burdensome; and there must be evidence from which an inference of settled hate and estrangement may be deduced. Davidsen v. Davidsen, 127 Pa. Superior Ct. 138, 142, 191 A. 619."

In reviewing the record and arriving at our own independent judgment, as we are required to do, we are aided by the able and comprehensive report of the master. Although his report is advisory only and not controlling, it is to be given the fullest consideration, particularly as regards the credibility of the witnesses whom he saw and heard. In his report the master stated: "Since almost every allegation or statement of the Libellant is either flatly denied by the Respondent or otherwise explained, and since the Libellant likewise contradicted a great number of Respondent's contentions, credibility becomes extremely important. . . . The testimony left the Master with a firm idea and conviction that the Libellant and her witnesses were the more credible and trustworthy observers of the facts." In discussing the advantage in determining credibility which a master who sees and hears the witnesses has, Judge RENO, in Smith v. Smith, 157 Pa. Superior Ct. 582, at page 584, 43 A. 2d 371, at page 372, said: "He possesses an advantage not granted to us. He sees the parties and their witnesses face to face and observes their appearance and demeanor as they testify. We are restricted to the cold type of the record from which temperament and personality have been subtracted. Yet the demeanor of witnesses is the very touchstone of credibility; in the

absence of reactions produced by other applicable tests, the appearance and demeanor of witnesses are the litmus by which the presence of truth is revealed." . In his report, the master, after referring to respondent's "positive, opinionated, and emphatic manner", stated: ". . . the Respondent's own demonstrations at the hearings of emphatic, angry, and loud assertions as he related old incidents which upset him; his frequent tones of heavy sarcasm; and his sometimes quickly rising anger at cross-examination, served to confirm the Libellant's case." .

From our examination of the voluminous record in this case, it is clear that the respondent was domineering, arrogant and contemptuous of his wife and apparently during the time the parties lived together made every effort to ridicule her and to hold her up to disdain, not only when the parties were alone but in the presence of visitors to the home.

It is in evidence that the respondent habitually and continuously made sarcastic and critical remarks about his wife and her work, and belittled her intelligence to her consequent humiliation and the embarrassment of visitors to the home. The libellant testified that the respondent "always said I was unintelligent". Gladys Rimensberger, who visited at the Bock home frequently, testified that the respondent said to her in the presence of his wife that the latter was not intelligent; "if Mary would give an opinion he would say that she was not intelligent enough to talk about those things"; that these comments were made not once but "every visit"; and in response to the question "Did it make any difference who was present?" replied, "No, in fact the more people who were there the more he would discredit her". Olivia Denison, a domestic in the Bock home for four or five years, told of hearing the respondent tell their son not to pay any attention to his mother "because her brains was in the bottom of her feet". Joyce Baer, who visited there frequently, described the respondent's con-

descension toward his wife with regard to education. Leslie Fryer, who with his wife was in the couple's home often, .testified that the respondent's atittude toward his wife was always that she "was a person of inferior mentality compared with anyone in general and with himself in particular"; that he frequently made the comment to her, "You don't [know] anything about that, why don't you shut up?" Similar testimony was given by other disinterested witnesses who had visited the Bock home.

That respondent's humiliation of his wife was not confined to the home was shown by the testimony of Rorer, an Internal Revenue agent and a stranger to both the parties. Rorer, referring to a visit to his office by the parties, testified that respondent acted in an "uncouth" manner toward the libellant, that "I would say he was practically trying to insult her", that respondent's manner and mode of "addressing her was such as would tend to humiliate her . . . I am not used to seeing a woman treated in that manner as if you were talking to an animal or something like that that you were sore at for having tried to bite you".

The libellant testified that the respondent called her vile names, accused her of infidelity, threw things at her, threatened her with physical violence and that as a result of his treatment of her, her health became impaired but that after the separation her health improved and she is now in good health. The family physician, a witness for the respondent, testified to the marked improvement in the libellant's health between the time of the separation and February 8, 1946, when he testified in this case. The fact that libellant's health was seriously impaired by cohabitation with respondent is in itself strong supporting evidence of indignities. *Clark v. Clark*, 160 Pa. Superior Ct. 562, 52 A. 2d 351.

We have in the instant case a recital of repeated and long-continued indignities inflicted by the husband upon the libellant, without reason or provocation. Her testi-

mony in many of its essential phases was corroborated, not only by competent and disinterested witnesses, but also by circumstances which stamped it as truthful. From the conduct of the respondent, from the statements, accusations and counter-charges made by him, only one logical conclusion can be drawn: that the legitimate ends and objects of matrimony have been destroyed and that this respondent has shown the hate, contempt and settled estrangement necessary to establish a sufficient ground for divorce within the meaning of the law.

The respondent's principal contention is that the libellant was not an injured and innocent spouse, and to support his contention relies primarily upon the libellant's alleged adulterous association with one, Collins.

In *Anthony v. Anthony,* 160 Pa. Superior Ct. 18, at page 20, 49 A. 2d 877, at page 878, Judge RHODES stated: "In order to determine whether a particular libellant is an 'innocent and injured spouse', the court must not only examine and weigh the evidence relating to the many complex factual situations which make up the total picture of marital conduct, but it must evaluate this evidence with relation to the *defenses available* to the respondent in connection with the *particular grounds* for divorce relied upon by the libellant." (Italics supplied.)

We do not propose to discuss in this opinion the testimony relative to the libellant's association with Collins, as no purpose would be served thereby. In *Com. ex rel. Bock v. Bock,* supra, 159 Pa. Superior Ct. 159, at page 162, we said—and we repeat—"There is no doubt that the wife's associations with Collins were indiscreet and reprehensible and might sustain an inference of adulterous relationship." However, from the testimony in this case, if we were to infer—and it would be only an inference—that libellant committed adultery with Collins, it would not bar libellant's right to a divorce. Her association with Collins occurred *long after* her cause for divorce on the ground of indignities had ac-

crued and did not provoke the indignities of which she complains.

Respondent's contention and his defense are ruled against him by *Clark v. Clark,* supra, 160 Pa. Superior Ct. 562, 52 A. 2d 351, in which, at page 566, President Judge RHODES stated: "There was some testimony produced by respondent as to alleged intimacies of libellant with one Mrs. Boyer. They were not connected in any way with the allegations in the libel, and were subsequent to the acts of indignities which would sustain the libel. The alleged conduct of libellant occurred after libellant and respondent had separated. The cause of divorce had fully accrued prior to libellant's alleged misconduct, and it did not provoke the indignities of which he complains. The doctrine recognized in Ristine v. Ristine, 4 Rawle 459 (460), Mendenhall v. Mendenhall, 12 Pa. Superior Ct. 290, and Fay v. Fay, 27 Pa. Superior Ct. 328, 336, is applicable to an action in divorce based on indignities to the person, and libellant's alleged adultery, committed after his right to a divorce had accrued, would not be cause for refusing the divorce."

Decree affirmed.