## Horne *v.* Horne, Appellant.

Submitted December 18, 1959.  Before RHODES, P.J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN and WATKINS, JJ.

*G. Wesley Allen,* for appellant.

*Frank J. Fortunato, Anthony L. V. Picciotti,* and *Fortunato & McAllister,* for appellee.

OPINION BY ERVIN, J., March 24, 1960:

In this divorce action, brought by the husband on the ground of indignities to his person, the master who heard the case recommended a divorce.  The court

below, after dismissing the wife's exceptions, entered a final decree in divorce and the wife has appealed.

The parties were married on September 26, 1942, at Millbourne, Delaware County, Pennsylvania. They had lived together before that time at 54 West 129th Street, New York City, and they continued to reside at that address until October 24, 1953. The plaintiff is fifty-eight years of age and the defendant some six years his junior. There were no children of the marriage.

The plaintiff is employed as a box maker and carpenter by the Pepsi-Cola Metropolitan Bottling Company of New York. On October 24, 1953 he left the 129th Street home and took up residence with his sister at 153 West 123rd Street, New York, where he remained for a little over a year, taking his meals at a rooming and boarding house operated by a Miss Lillian Freeman at 112 West 131st Street. In November or December of 1954 he moved from 123rd Street and rented a room in Miss Freeman's establishment. He occupied the room on 131st Street and took his meals there when in New York up to the time of the hearings. In October of 1955 he moved to Philadelphia, having purchased a home at 603 North 52nd Street in that city. His testimony is that he at that time established his home in Philadelphia, that he intended to make Philadelphia his permanent home, and that since October of 1955 he has spent his weekends here, leaving for New York on Sunday evenings and remaining there at his employment until his return to Philadelphia on Friday evenings. The complaint was filed on September 11, 1957.

We agree with Judge ULLMAN of the court below that "The circumstances of the purchase of the 52nd Street home and the manner in which title was taken are unusual, but they do not negative the plaintiff's acquisition of a Pennsylvania domicile." Some time in

1955 the plaintiff borrowed from Miss Freeman the sum of $6,500.00. With this money he intended to buy a home, furnish it, and undertake alterations and repairs looking towards converting the house into a three-family dwelling. The plaintiff only had several years to go until retirement. He was preparing for this event. His aunt, Claudia Zachary, who testified for plaintiff, said that she urged the plaintiff to purchase this home so that he would have a place to live in his old age. She also testified that she hoped that she might live with him. She has known plaintiff all his life and, in fact, helped to raise him when he was a small boy in Savannah, Georgia. Plaintiff's cousin, Gertrude Bernard, testified that she had known plaintiff all of his life and lived in the same house with him and the aunt in Savannah, Georgia. She said that plaintiff had invited the aunt and her to come live with him. They probably will do this. The deed which is on record shows the grantees as "Henry Horne, Jr. and Lillian Freeman Horne, his wife, as tenants by the entireties." The explanation given by the plaintiff and Miss Freeman for taking the title in this manner was that Miss Freeman wanted security for the repayment of the loan she had made to the plaintiff and that they were informed by the real estate agent who handled the transaction that it was necessary, if they were to be joint tenants, that they be designated as husband and wife, even though he knew they were not such.

The manner in which title was taken is not evidence that the plaintiff did not acquire a Pennsylvania domicile; nor does it, as the defendant suggests, compel the conclusion that there was a meretricious relationship between the plaintiff and Miss Freeman which might make him other than an injured and innocent spouse. Miss Freeman, a woman twenty years younger than the plaintiff, was a close friend of the plaintiff's sister. She loaned the plaintiff $6,500.00, taking the

plaintiff's promissory note. At the time of her appearance before the master, $1,500.00 of this amount had been repaid. There is no evidence in the record to warrant the conclusion that her relations with the plaintiff were other than proper. To the contrary, both she and the plaintiff expressly denied any improper intimacy. Miss Freeman appeared as a witness and testified that her willingness to lend the money to plaintiff without interest was induced by the fact that the plaintiff, who is a carpenter, did many odd jobs for her gratis on the rooming house which she operated in New York City. The master and the court below gave credence to her testimony and we have carefully read the same and agree with their conclusion.

The basic jurisdictional requirement with respect to residence within the Commonwealth is contained in §16 of the Act of May 2, 1929, P. L. 1237, as amended, 23 PS §16: "No spouse shall be entitled to commence proceedings for divorce by virtue of this act who shall not have been a bona fide resident of this Commonwealth at least one whole year immediately previous to the filing of his or her petition or libel: Provided, That, if the proceedings for divorce are commenced in the county where the respondent has been a bone fide resident at least one whole year immediately previous to the filing of such proceedings, in such case, residence of the libellant within the county or State for any period shall not be required. The libellant shall be a competent witness to prove his or her residence." Bone fide residence has been held repeatedly to mean residence with domiciliary intent. Temporary residence within the Commonwealth for one year will not suffice; the plaintiff must have his legal domicile here: *Reed v. Reed,* 30 Pa. Superior Ct. 229; *Lyon v. Lyon,* 13 Dist. 623. By domicile is meant the place where a person has his true, fixed, permanent home and principal establishment, to which whenever he is absent he has the

intention of returning: *Dorrance's Estate,* 309 Pa. 151, 173, 163 A. 303. It is not our policy to permit strangers to use the courts of this Commonwealth for purposes of divorce: *Verbeck v. Verbeck,* 160 Pa. Superior Ct. 515, 52 A. 2d 241, and a plaintiff who has come to Pennsylvania from another state has the burden of proving his domicile here by competent evidence: *Halpine v. Halpine,* 52 Pa. Superior Ct. 80. The purchase of a home in Philadelphia, the presence of friends and close relatives of the plaintiff here, the plaintiff's familiarity with the city and its institutions, his occupancy of the home except when required to be in New York at his work and his avowed intention to make this his fixed and permanent abode, all plainly indicate that Philadelphia was plaintiff's domicile. The fact that the plaintiff is not registered to vote in Pennsylvania is not conclusive. He is not registered elsewhere. Nor is the circumstance that his automobile licenses are issued in New York, which was explained because of the requirements of his employment. "The proof of a change of domicile does not depend upon any particular fact but upon whether all the facts taken together tend to establish a new, fixed and permanent residence." *Com. ex rel. Saunders v. Saunders,* 155 Pa. Superior Ct. 393, 396, 38 A. 2d 730. We agree with the conclusion of the court below that the plaintiff has met the burden of proving that he did not come to Pennsylvania merely for the purpose of a divorce but that he was a bona fide resident of the Commonwealth for more than a year previous to the filing of his complaint.

The plaintiff testified—and he was corroborated in many details by witnesses whom he called—to a course of conduct on the part of the defendant, especially during the latter years of their cohabitation, which, if believed, was well calculated to render the life of any man of reasonable sensibility burdensome and his con-

dition intolerable. Passing over the testimony regarding the defendant's poor housekeeping, personal uncleanliness, activities in the numbers business and spiritualism, and the complaints about her maintenance of dogs and cats on the premises in unusual numbers and unsanitary condition, we find the record replete with instances of physical abuse, public embarrassment, vulgar name-calling, and unfounded accusations of marital infidelity, accompanied by serious impairment of the plaintiff's health. The defendant denied the charges made by the plaintiff, but the master, who had the advantage of hearing and observing the parties and their witnesses, resolved the question of credibility in favor of the plaintiff. We are not precluded, of course, by the master's findings, but must make our own determination from an independent review of the record. Nevertheless, the master's conclusions, especially where, as here, he makes an exhaustive analysis of the testimony, are entitled to the fullest consideration: *Bock v. Bock*, 162 Pa. Superior Ct. 506, 58 A. 2d 372; *Van Houten v. Van Houten*, 174 Pa. Superior Ct. 29, 98 A. 2d 397.

The law on the subject of indignities to the person has been so thoroughly stated in so many recent opinions that we deem it unnecessary to repeat it here.

Suffice it to say that we have made an independent study of the evidence and are convinced that the plaintiff was entitled to a divorce a.v.m.

Order affirmed.

———

Dissenting Opinion by Wright, J.:

I simply cannot go along with the conclusion that this plaintiff acquired a Pennsylvania domicile. Our courts have been vigilant to protect Pennsylvania wives from attempts by their husbands to evade support orders by obtaining divorces out of the state. See

*Davidsen v. Davidsen,* 175 Pa. Superior Ct. 123, 103 A. 2d 296; *Commonwealth ex rel. McVay v. McVay,* 177 Pa. Superior Ct. 623, 112 A. 2d 649; affirmed 383 Pa. 70, 118 A. 2d 144. Conversely, we should be just as vigilant to protect this appellant, who has secured an order of support in the State of New York, from the attempt of her husband to impose upon our jurisdiction. I am not so naive as to overlook the inference which necessarily arises from the fact that plaintiff, together with the purported landlady in whose New York home he continues to reside, took title to real estate in Philadelphia in the name of husband and wife. It is significant that plaintiff did not call the real estate agent as a witness. See *Orsuto v. Orsuto,* 171 Pa. Superior Ct. 532, 91 A. 2d 284; *Abrams v. Crown,* 178 Pa. Superior Ct. 407, 116 A. 2d 331.

In a divorce proceeding it must affirmatively appear that there has been a clear intention on the part of the plaintiff to abandon a former residence and to make Pennsylvania his permanent domicile, coupled with an actual bona fide residence for one year within this Commonwealth: *Gearing v. Gearing,* 83 Pa. Superior Ct. 423; *Alburger v. Alburger,* 138 Pa. Superior Ct. 339, 10 A. 2d 888. Far from establishing plaintiff's domicile in Pennsylvania, the record clearly discloses that plaintiff is still a resident of the State of New York, which is his place of employment. He is licensed to drive in New York, where his automobile is registered. He continues to engage extensively in social, community and fraternal activities in New York, whereas he belongs to no organizations whatever in Philadelphia. He does not vote in Philadelphia, and he pays no Philadelphia wage tax. In fact the master found that plaintiff's residence here was of a "transient character", and reached the conclusion that domicile was established "after much hesitation".

I would reverse the decree below for want of jurisdiction. Cf. *Chidester v. Chidester*, 163 Pa. Superior Ct. 194, 60 A. 2d 574.

RHODES, P. J., joins in this dissenting opinion.