Stottlemyer, Appellant, *v.* Stottlemyer.

*Alan N. Linder,* for appellant.

*Daniel L. Carn,* for appellee.

OPINION PER CURIAM, April 4, 1973:
Order affirmed.

---

DISSENTING OPINION BY HOFFMAN, J.:

In this appeal, appellant challenges the constitutionality of the one-year residency requirement for divorce actions, as provided for in the Pennsylvania Divorce Law, Act of May 29, 1929, P. L. 1237, Section 16, as amended, 23 P.S. §16.[1]

On November 16, 1971, appellant filed a Complaint in Divorce in this Commonwealth against her husband. The Complaint specifically alleged that neither party had resided within the Commonwealth for at least one year prior to commencing the divorce action. In fact, the Complaint stated that the parties resided in Illinois from September 1970 to August 1971, and that they did not become residents of Pennsylvania until August of

---

[1] Section 16 provides: "No spouse shall be entitled to commence proceedings for divorce by virtue of this act who shall not have been a bona fide resident in this Commonwealth at least one whole year immediately previous to the filing of his or her libel: Provided that if the proceedings for divorce are commenced in the County where the respondent has been a bona fide resident at least one whole year immediately previous to the filing of such proceedings, in such case, residence of the libellant within the County or State for any period shall not be required. The libellant shall be a competent witness to prove his or her residence."

1971 (three months prior to suit). The lower court sustained preliminary objections to the Complaint and ordered that appellant's Complaint be dismissed. Appellant contends that Section 16 of the Divorce Law is unconstitutional because it violates (1) the equal protection and (2) the due process clauses of the Fourteenth Amendment of the United States Constitution, as well as (3) the right to travel guaranteed by the Constitution. Appellee denied such violations, and further argues that we should dismiss the appeal as the parties are now residents of Pennsylvania for more than one full year, and that the issue is therefore moot.

## I. The Question of Mootness

While it is true that the actual parties herein may now meet the "residence" requirements prescribed by statute, that fact does not compel this Court to dismiss the appeal. In the first place, it is probable that a party wishing to challenge the residency requirement would never be able to institute suit, have the lower court dispose of the case, file an appeal to this Court, and obtain an appellate decision within a year's time. Furthermore, the question presents, in my opinion, an issue of recurring public interest. Certainly, a judicial determination should be made to guide future litigants as to when suit may properly be brought. As a large number of persons will be affected by our decision, I believe a determination should be made to avoid future litigation on this point.

As the Supreme Court of the United States recently said, in an opinion by Justice MARSHALL: "The District Court properly rejected the State's position that the alleged invalidity of the three-month requirement had been rendered moot, and the State does not pursue any mootness argument here. Although appellee now can

vote, the problem to voters posed by the Tennessee residency requirement is 'capable of repetition, yet evading review.' Moore v. Ogilvie, 394 U.S. 814, 816 (1969); Southern Pacific Terminal Co. v. Interstate Commerce Commission, 219 U.S. 498, 515 (1911)." *Dunn v. Blumstein,* 405 U.S. 330, 333 n.2, 92 S. Ct. 995, 998 n.2 (1972).

## II. Durational Residence Requirement as Jurisdictional

Appellant has raised the question of whether the residency requirement in the Divorce Law is jurisdictional. In support of her argument that it is not, appellant calls attention to United States Supreme Court decisions which do not require any *durational* period of residence in upholding the validity of a divorce and its binding effect on sister states through the full faith and credit clause. In *Williams v. North Carolina I and II,* 317 U.S. 287 (1942); 325 U.S. 226 (1945), the Supreme Court held that *domicile* rather than durational residence is essential to the court's jurisdiction to entitle a divorce decree to full faith and credit. Our Court has followed this rule and has held that mere presence is insufficient to obtain jurisdiction; residence must be accompanied by objective signs of an intention to remain in this Commonwealth. *Loiacono v. Loiacono,* 179 Pa. Superior Ct. 387, 116 A. 2d 881 (1955); *Esenwein v. Commonwealth ex rel. Esenwein,* 325 U.S. 279 (1945); Freedman, *Law of Marriage and Divorce in Pennsylvania,* §119.

To say that a specific period of residence *need* not be shown to demonstrate "domiciliary intent" for constitutional purposes, does not mean that a state is precluded from setting a durational residence requirement in its divorce laws. Our legislature deemed it neces-

sary to set such a minimum period of residency in the Divorce Act in order to insure that only *bona fide* residents of Pennsylvania could seek and obtain divorces. There is no question that a state has a valid interest in protecting against itinerants' "forum shopping" and in avoiding the establishment of a "divorce haven" for nonresidents.

This Court has declared that the durational residency requirement prescribed by statute is jurisdictional. As we said in *Fishman v. Fishman,* 167 Pa. Superior Ct. 428, 430, 74 A. 2d 682 (1950) : "A fundamental requisite of jurisdiction in actions for divorce is the residential requirements of the statute that the spouse bringing a divorce action has been a bona fide resident in the Commonwealth at least one year before the filing of the libel . . . . Such requirement is strictly jurisdictional and cannot be waived by the parties, even with the consent of the court."

The fact that a residency requirement is jurisdictional does not conclude a discussion of the issues. In effect, if the statutory requirement is valid, parties not residing in this Commonwealth for a one-year period are barred suit entirely. The validity of such a bar, in light of certain constitutional guarantees and prohibitions, must be determined.

### III.   The Residency Requirement as Constitutional

This case appears to be the first constitutional test of the Pennsylvania durational residence requirement in divorce actions.[2]   Because of the importance of a

---

[2] Like the majority of other jurisdictions, Pennsylvania requires both the establishment of a domicile and the fulfillment of a waiting period before divorce jurisdiction attaches. Until recently, the validity of residency requirements for divorce was taken

resolution of the problem, a full discussion of the constitutional issues is necessary.

A. The durational residency statute as violative of the equal protection clause and as an impingement of one's constitutional right to interstate travel.

Appellant contends that the practical and legal effect of the residency requirement of §16 is to penalize her as a new resident. She contends that §16, therefore, is a direct impingement on her constitutional right to travel. "The constitutional right to travel from one State to another . . . occupies a position fundamental to the concept of our Federal union . . . . That right finds no explicit mention in the Constitution. In any event, freedom to travel throughout the United States has long been recognized as a basic right under the Constitution." *U.S. v. Guest*, 383 U.S. 745, 757-758 (1966). ·

The Supreme Court of the United States has held that a durational residence law must be closely scrutinized as it acts to single out the class of bona fide residents who have recently exercised this constitutionally protected right: *Dunn v. Blumstein*, supra at 338, 92 S. Ct. at 1001 (1972). As §16 of our Divorce Law sets up this dichotomy on the basis of continuous residence, a classification which discriminates against one group in favor of the other arises. "Durational residence laws must be measured by a strict equal protection test: they are unconstitutional unless the State can

---

practically for granted. There have been a few challenges, but they have been largely rejected. *Coleman v. Coleman*, 32 Ohio 2d 155, 291 N.E. 2d 530 (1972) ; *Whitehead v. Whitehead*, 492 P. 2d 939 (Hawaii, 1972) ; *Place v. Place*, 278 A. 2d 710 (Vt. 1971) ; *but, see Wymelenberg v. Syman*, 328 F. Supp. 1353 (E.D. Wisc., 1971) (two year requirement held unconstitutional).

demonstrate that such laws are *'necessary to promote a compelling governmental interest.'"* *Dunn v. Blumstein,* supra at 342, 92 S. Ct. at 1003, quoting *Shapiro v. Thompson,* 394 U.S. 618, 634 (1969) (Emphasis added).

In *Shapiro v. Thompson,* 394 U.S. 618 (1969), the Supreme Court of the United States held that because the right to interstate travel is a fundamental right, it cannot be denied to indigents any more than it could be denied to any other class of citizens, absent a compelling state interest. Appellee argues that *Shapiro* is not controlling on the instant case before this Court. Appellee argues that appellant's right to travel is not infringed upon in any constitutionally relevant sense as such basic needs as welfare, voting, or other indispensable right to a citizen are not at question. Appellee asserts that *Shapiro* and *Dunn,* supra, were not meant to cover all durational residence statutes, but only those affecting basic human and political rights, the deprivation of which would cause a hardship on the newcomer.

This distinction lacks validity. As was stated in the majority opinion in *Dunn v. Blumstein,* supra at 339-40, 92 S. Ct. at 1001-1002, delivered by Justice MARSHALL: "This view represents a fundamental misunderstanding of the law. It is irrelevant whether disenfranchisement or denial of welfare is the more potent deterrent to travel. Shapiro did not rest upon a finding that denial of welfare actually deterred travel. . . . In Shapiro we explicitly stated that *the compelling state interest test would be triggered by 'any classification which serves to penalize the exercise of that right [to travel]* . . . .' Id. at 634." (Emphasis added).

Two concomitant requirements must be met by a state in justifying such a classification scheme. Not only must the Commonwealth demonstrate that the

statute is "necessary", and therefore that no alternative and "less drastic means" exist to promote a valid state interest: *Shelton v. Tucker*, 364 U.S. 479, 488 (1960); but, the statute must also be supported by a "compelling" governmental interest, which is *not* to say that the state need only show a "rational basis" for the classification under the traditional equal protection analysis. *Shapiro v. Thompson*, supra; *Skinner v. Oklahoma*, 316 U.S. 535 (1942).

It is necessary, therefore, that each of the major reasons advanced in support of finding a governmental interest in requiring a statutory waiting period for "newcomers" to this Commonwealth who are seeking a divorce be considered. They are: (1) to maintain marital harmony; (2) to assure residence of the petitioner; (3) to protect the state from becoming a "divorce haven"; and (4) to deter those with marital problems from entering the state.

While a state may attempt to maintain marital stability and harmony among its citizens by limiting the means or grounds for divorce, it must do so without invidious discrimination. The question here is not whether the state can require *all* its residents, after there is grounds for divorce, to wait one year before filing for divorce. The divorce law as it is framed permits an individual who has resided in this Commonwealth for more than one year to file for divorce in a matter of days after his marriage, while the "newcomer" must delay filing until the one-year waiting period has passed. It is difficult to appreciate how the durational requirement accomplishes its stated purpose, i.e., preservation of the marital unit. As the Supreme Court stated in *Shapiro,* supra at 394 U.S. 637: "This logic would also require a similar waiting period for long-term residents of the State."

There is no question that Pennsylvania, as do its sister states, has a valid interest in making available

a forum for divorce actions to residents of the Commonwealth, and not transients. This is true from a policy standpoint as well as a constitutional one. For purposes of full faith and credit a divorce decree granted by any state need only be recognized if the parties established "domicile" within that state. See discussion, *supra*. For that reason, a requirement that the spouse seeking to obtain a divorce must prove *bona fide* residence—not only presence in the Commonwealth but an objective showing of the intent to remain, i.e., domiciliary intent—is imperative.

The United States Supreme Court has stated, however, that domiciliary intent may be shown even by the residence of a party within the state for a period of one day. *Williams v. North Carolina,* supra; see also, *Powell v. Powell,* 40 Hawaii 625 (1954). Even if it is conceded that waiting periods are of some evidentiary value in determining domicile, the legal effect of §16 of the Divorce Act is to cause an irrebutable presumption to arise that a domicile cannot be established in less than one year. Furthermore, "far less drastic means" of determining domicile are available to a trial court. As the Supreme Court said in *Shapiro,* supra at 394 U.S. 636-637, "The argument that the waiting period serves as an administratively efficient rule of thumb for determining residency similarly will not withstand scrutiny .... [T]here is no need for a State to use the one-year waiting period as a safeguard against fraudulent receipt of benefits; for less drastic means are available and are employed to minimize that hazard." See discussion, *infra.*

The third major reason in support of the durational requirement, for the same reason as in the second, must fail. A state has a valid interest in preventing a wave of litigants from coming into the Commonwealth and making the state a "divorce haven". But, in respond-

ing to this same contention, the U.S. District Court in Wisconsin stated in *Wymelenberg v. Syman,* supra at 1356: "We emphasize that the issue today is a waiting period requirement *used in conjunction with* a residence, i.e., domicile, requirement, not just a waiting period or just a domicile requirement alone. As we understand the term 'quickee divorce mill', it suggests a jurisdiction which grants divorces to visitors as opposed to permanent residents or domiciliaries. Accordingly, there would seem little danger that Wisconsin would turn into a divorce mill provided that the law of domicile is followed in determining jurisdiction over a divorce matter."

Finally, appellee advances the contention that the durational requirement deters those with marital problems from entering the state, thereby conserving the Commonwealth's resources. While a state has a valid interest in preserving the fiscal integrity of its programs and may legitimately attempt to limit its expenditures pursuant to that goal, it may not accomplish such a purpose by invidious distinctions between classes of its citizens. *Shapiro,* supra. Furthermore, if a state relies on a given statute to exclude "undesirables", this provision must clearly fail as it is impermissible to attempt to chill an individual's constitutional right to travel and settle in the state of his choice. *Edwards v. California,* 314 U.S. 160 (1941); *U.S. v. Jackson,* 390 U.S. 570 (1968).

I am not convinced that any serious contention could be asserted to justify the effects of the durational requirements of §16. Under the close scrutiny with which the instant statute must be viewed, as it affects the fundamental rights of interstate travel and the freedom over whether to marry or remain married, there have not been presented such compelling governmental interests as to justify the classification scheme.

Even if the stated interests were of a compelling nature, I am not convinced that the legislation enacted to protect those interests was necessary. Classification schemes, as was noted previously, cannot withstand equal protection analysis when "less drastic means" exist. Since more precise tests are available "to winnow successfully from the ranks . . . those whose residence in the State is bona fide", *Carrington v. Rash,* 380 U.S. 89, 95 (1965), conclusive presumptions, as result in invoking the durational requirements of §16, are impermissible.

This Court has held that proof of a change of domicile does not depend upon any particular fact, e.g., period of residence within the state, but upon whether all the facts taken together tend to establish a new, fixed and permanent residence. *Commonwealth ex rel. Saunders v. Saunders,* 155 Pa. Superior Ct. 393, 396, 38 A. 2d 730 (1944). There are many factors which may be taken into consideration to determine "bona fide" residence.[3] Difficulty of factual determinations of domicile cannot justify a state's refusal to make such a determination on a case-by-case approach.

---

[3] Our courts which are competent to determine other complicated matters of fact are certainly capable of deciding whether a divorce plaintiff intends to stay within their jurisdiction. "In most cases, it is not more difficult to determine whether one recently arrived in the community has sufficient intent to remain to qualify as a resident than it is to make a similar determination for an older inhabitant." *Hall v. Beals,* 396 U.S. 45, 55 (1970). One commentator has suggested that such factors as whether the party has purchased a home or signed a lease, registered a car in the state, secured a permanent job, the abandoning of ties with the state from which he comes by cancelling accounts, and buying a one-way ticket to one's destination, are just some of the things that can be admitted as evidence of "domiciliary intent". CLAD, FAMILY LAW 136-138 (1958). This Commonwealth has often accepted such evidence to establish or reject domiciliary intent. See, e.g., *Horne v. Horne,* 191 Pa. Superior Ct. 627, 632, 159 A. 2d 239 (1960).

As I can find no compelling reasons to support the unequal treatment of one class of bona fide residents over another, and as "less drastic means" exist to eliminate this classification, §16 of the Pennsylvania Divorce Law should, in my opinion, fall. There can be no justification for the "chilling effect" on appellant's constitutional right to travel caused by the durational requirement.[4]

B.  The durational residency statute as violative of appellant's right of equal access to our courts as guaranteed by the due process clause.

Appellant also contends that §16 as applied denies her fair and equal access to our courts as guaranteed by the due process clause of the Constitution.

In *Boddie v. Connecticut,* 401 U.S. 371 (1971), the Supreme Court of the United States held that it was unconstitutional to deny access to the divorce courts from indigents unable to pay certain court costs in instituting suit. The Court in reversing the lower court's dismissal of appellant's action, stated at 374: "Our conclusion is that, given the basic position of the marriage relationship in this society's hierarchy of values and the concomitant state monopolization of the means for legally dissolving this relationship, due process does prohibit a State from denying, solely because of inability to pay, access to its courts to individuals who seek judicial dissolution of their marriages."

While it is impossible to award gradations of importance to such rights as voting, welfare, marriage or divorce, the Supreme Court of the United States in a number of recent decisions has recognized that the right

---

[4] A similar conclusion was reached in striking down a one-year residency requirement for applicants for the state bar examination. *Keenan v. Board of Law Examiners,* 317 F. Supp. 1350 (E.D. N.C. 1970).

to marry and to dissolve the legal relationship of marriage by divorce represents one of the "basic civil rights of man." *Loving v. Virginia*, 388 U.S. 1, 12 (1967); *Boddie v. Connecticut*, supra; *Skinner v. Oklahoma*, 316 U.S. 535 (1942); *see also, Roe v. Wade*, (January 22, 1973) 41 U.S. L.W. 4213. This right to divorce is, as the right to travel, not mentioned specifically in the Constitution. It has been suggested that certain rights, however, "so elementary [were] conceived from the beginning to be a necessary concomitant of the stronger Union the Constitution created." *U.S. v. Guest*, 383 U.S. 745, 758 (1966). As Justice GOLDBERG observed in his concurring opinion to *Griswold v. Connecticut*, 381 U.S. 479, 488 (1965), ". . . the Framers of the Constitution believed that there are additional fundamental rights, protected from governmental infringement, which exist alongside those fundamental rights specifically mentioned in the first eight constitutional amendments." Justice GOLDBERG reasoned that the clear implication of the Ninth Amendment[5] was that such unenumerated, but basic rights were guaranteed by our Constitution. In the recent opinion of *Roe v. Wade*, supra at 41 U.S.L.W. 4218, Justice BLACKMUN, writing for the majority, adopted the reasoning of Justice GOLDBERG in *Griswold, supra*, in striking down an abortion statute as a violation of appellant's right to privacy.

It is not necessary that we cognate the right to divorce with the protections afforded to such basic and fundamental rights as freedom of speech or religion. Instead, we should take cognizance of and follow the holding of the Supreme Court of the United States in *Boddie v. Connecticut, supra* at 382-83, where the Court

---

[5] The Ninth Amendment provides: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."

said: "We do not decide that access for all individuals to the courts is a right that is, in all circumstances, guaranteed by the Due Process Clause of the Fourteenth Amendment so that its exercise may not be placed beyond the reach of any individual, for, as we have already noted, *in the case before us this right is the exclusive precondition to the adjustment of a fundamental human relationship.* The requirement that these appellants resort to the judicial process is entirely a state-created matter. Thus we hold only that *a State may not, consistent with the obligations imposed on it by the Due Process Clause of the Fourteenth Amendment, pre-empt the right to dissolve this legal relationship without affording all citizens access to the means it has prescribed for doing so.*" (Emphasis added). See also, *Wymelenberg v. Syman, supra* at 1354-1355.

The principle of due process of law is firmly embedded as a basic tenet of our society. It requires that all individuals be afforded a meaningful opportunity to be heard. A state "absent a countervailing state interest of overriding significance . . . may not, consistent with the obligations imposed on it by the Due Process Clause of the Fourteenth Amendment, pre-empt the right to dissolve . . . [the marital bonds] without affording all citizens access to the means it has prescribed for doing so." *Boddie v. Connecticut, supra* at 401 U.S. 377, 383.

Pennsylvania, by applying §16, has granted access to its divorce courts to "bona fide residents" who have lived in this Commonwealth for at least one year, but has denied similar access to "bona fide residents", such as the appellant, who have not yet lived in the state for that length of time. In that this precludes "the adjustment of a fundamental human relationship," *Bod-*

*die,* supra at 401 U.S. 383, simply "because they have recently moved into the jurisdiction," *Shapiro,* supra at 394 U.S. at 634, it is necessary to conclude that whether judged by the equal protection clause "compelling interest" test or by the due process clause "overriding significance" test, §16 should be held unconstitutional.

## IV. Conclusion

In holding §16 unconstitutional, I do not imply that the Commonwealth of Pennsylvania may not require an affirmative showing of the "bona fide" nature of alleged residents seeking to obtain a divorce. This may even include a short durational residency requirement. As the Supreme Court of the United States said in *Dunn v. Blumstein,* supra at 348, 92 S. Ct. at 1006 (1972), "Objective information tendered as relevant to the question of bona fide residence . . . .—places of dwelling, occupation, car registration, driver's license, property owned, etc. (footnote omitted)—is easy to double check, especially in light of modern communications . . . . Fixing a constitutionally acceptable period is surely a matter of degree. It is sufficient to note here that 30 days appears to be an ample period of time for the State to complete whatever administrative tasks are necessary to prevent fraud—and a year, or three months is too much."

It is not this Court's function to legislate. I would defer to our able Legislature to determine just what period of time, guided by constitutional guidelines, is sufficient to make a determination of "bona fide" residence. It is permissible and suggested that to insure the "good faith" of the spouse seeking divorce that the strict burden of proof be on the petitioner to establish, to both the court's satisfaction and consistent with the

law, the physical presence of the party in the state coupled with clear proof of domiciliary intent.[6]

Until such time as the Legislature arrives at a carefully-drawn alternative to §16 as it now exists, the waiting period for residents seeking a divorce should be suspended, and the lower court directed to entertain the action if the parties satisfy all other jurisdictional and procedural requirements, including proof of domicile.

The order of the court below should be reversed, and the case remanded for further consideration.

SPAULDING, J., joins in this dissenting opinion.

---

[6] *Restatement*, Conflict of Law, 2d (Proposed Official Draft), §§11-23, provides that domicile is established by physical presence in the state with an intent to make it one's home. When an individual moves into a new state, the burden of proof is upon him to show that a new domicile has been established. Such proof consists of evidence of participation in the new community which is indicative of a member of the community as opposed to merely a visitor of the community.