### Community College Correctional Institution Students

KANE, *Attorney General,* October 6, 1975.—You have asked for our opinion as to whether inmates of State correctional institutions who wish to attend community colleges in the Commonwealth[1] may claim as their residence the place within the Commonwealth from which they came prior to their incarceration and to which they intend to return after their release. The determination of an inmate's residency is crucial to the determination of how much tuition he must pay. It is our opinion that inmates may lawfully claim such place as their legal residence, provided that, prior to their incarceration, they had established a legally recognizable domicile in that place. The effect of such a claim of residency on the amount of tuition these inmates pay is as follows:

Normally, a student at a community college pays as tuition one-third of the actual cost of his education: Community College Act of August 24, 1963, P. L. 1132, sec. 9(a), 24 PS §5209(a). The local

_____

1. We assume, of course, that such attendance is consistent with the terms of their confinement.

sponsor, if he is a resident of a member thereof, assumes one-third of the cost of his education: 24 PS §5209(a) and (c). The Commonwealth reimburses the college for the remaining one-third: 24 PS §5214(b).

If a student enrolls in a community college, and he is not a resident of a member of the local sponsor of that college, he must pay as tuition two-thirds of the actual cost of his education: 24 PS §5209(c). Of course, the college is still entitled to one-third through reimbursement: 24 PS §5209(c). However, if the student is not a resident of a member of the local sponsor of the college which he is attending, but is a resident of a member of a local sponsor of another community college and has enrolled in the first college with the permission of the board of trustees of the college where he resides, the board of trustees of his home college must pay to the college in which he is enrolled one-third of the cost of his education: 24 PS §5209(b). Again, the student pays one-third and the Commonwealth reimburses one-third.

You have related to us that, under the program in question, certain community colleges are refusing to permit inmates to claim as their residence that place within the Commonwealth from which they came prior to their incarceration. These inmates are thereby denied the benefit of having the board of trustees of their home community college pay one-third of the cost of their education. Therefore, they must pay as tuition two-thirds of the cost of their education, instead of the one-third they would have paid had they been allowed to claim as their residence the place from which they came prior to incarceration.

To restate, it is our opinion that inmates may lawfully claim as their legal residence that place from which they came prior to incarceration and to which

they intend to return upon their release, provided that, prior to their incarceration, they had established a legally recognizable domicile in that place. As such, if, prior to their incarceration, such inmates were residents of a member of a local sponsor of a community college, and subsequent to their incarceration they enrolled in another community college with the permission of the board of trustees of the college where they previously lived, they are entitled to have the board of trustees of their home college pay one-third of the cost of their education. Naturally, they will pay one-third and the Commonwealth will reimburse the college which they are attending for the remaining one-third.

In the Community College Act of August 24, 1963, P. L. 1132, sec. 8, 24 PS §5208, it is provided that:

"*Any resident* of the Commonwealth may apply for admission to any community college established under this act. . . . The State Board of Education may prescribe standards for determining the place of residence of students and applicants for admission to community colleges." (Emphasis supplied.)

The act contains no definition of the terms, resident or residence, and the courts of the Commonwealth have had no occasion to construe these terms as they are contained in the act. The courts have had occasion to examine the legal import of the term "residence" in regard to questions arising under election laws and the divorce laws of the Commonwealth. They have consistently held that the concept of residence as used in these statutes can be used interchangeably with the concept of domicile. E.g., In Re Lesker, 377 Pa. 411, 105 A. 2d 376 (1954) (construing electoral requirements as contained in article II, section 5 of the Constitution of 1874, as amended, and article VII, section 1 of the Constitution of 1968); Horne v. Horne, 191

Pa. Superior Ct. 627, 159 A. 2d 239 (1960) (construing the residency requirements of The Divorce Law of May 2, 1929, P. L. 1237, 23 PS §16); DiMilia v. DiMilia, 204 Pa. Superior Ct. 188, 203 A. 2d 382 (1964) (divorce law).[2] It is therefore our opinion that the term "residence" as used in the Community College Act can be used interchangeably with the concept of domicile as that concept has been used by the courts in construing the election laws and the divorce laws of the Commonwealth.

The courts have determined that there are two elements necessary to establish domicile. The first is that a person have in the place claimed as his domicile, a fixed, permanent and principal abode. The second is that he have the intent to make that place his domicile such that whenever he leaves it, he always has the ultimate intention to return to it. E.g., In Re Lesker, supra; Horne v. Horne, supra.

Once established, domicile is presumed to continue unless there is some affirmative action on the part of the individual to change it. To make such a change, an individual must change both the physical location of his principal abode, and he must also change his *intention* to claim that place as his domicile: In Re Lesker, supra.

By reason of an inmate's incarceration, it can be said that his home or principal abode has changed from the community in which he was formerly living to the institution in which he is incarcerated. However, in order to show that his domicile has changed, it must also be established that he has abandoned his intent to return to his former home. Further, although

---

2. The courts of the Commonwealth, in interpreting these laws, have also used domicile interchangeably with legal residence and bona fide residence.

this question of the intent of a particular inmate is a question of fact which can be established through the use of a wide variety of evidence,[3] the burden of proving that an inmate's domicile has changed rests upon the party asserting that change.[4] Until it is demonstrated that the inmate has abandoned his intent to claim that place as his domicile, it is *presumed* that his prior domicile continues. See In Re Lesker, supra; Horne v. Horne, supra.

In conclusion, it is our opinion and you are advised that inmates at State correctional institutions may lawfully claim as their residence for purposes of at-

---

3. Regulations regarding the determination of legal residency or domicile have been issued by the Department of Education for students at State colleges, 22 Pa. Code §153.11 et seq. The regulations set forth several factors which may be used in determining the legitimacy of an out-of-State student's intent to be domiciled in Pennsylvania. However, the question herein is the intent of an inmate who is already a citizen of the Commonwealth to claim as his domicile a particular place within the Commonwealth.

4. At this time, we do not reach the question of whether an inmate may claim as his legal residence the institution in which he is incarcerated. However, were an inmate to make such a claim, the burden of proving this claim would rest with the inmate as the party asserting the change. (This burden would be the burden of going forward with the evidence establishing such residency rather than the burden of persuasion.) When determining the inmate's residence, the community college could not impose upon the inmates as a class a procedural or evidentiary burden to prove residency which is imposed upon no other group of students. Constitutional requirements of equal protection dictate that the residence of all students, whether inmate or not, must be determined on the basis of the same set of factors uniformly applied. Compare Samuel v. University of Pittsburgh, 375 F. Supp. 1119 (W. D. Pa., 1974), appeal dismissed, 506 F. 2d 355 (3rd Cir., 1975), with Sloane v. Smith, 351 F. Supp. 1299 (M. D. Pa. 1972).

tending a community college that place within the Commonwealth from which they came prior to incarceration and to which they intend to return after their release, provided they had established a legally recognizable domicile in that place prior to their incarceration.

The consequences which our conclusion has on the amount of tuition which such inmates actually pay are as noted above.